# United States Court of Appeals for the Federal Circuit

---

**SHARON M. HELMAN,**
*Petitioner*

v.

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

v.

**VETERANS OF FOREIGN WARS, AMVETS, IRAQ AND AFGHANISTAN VETERANS OF AMERICA, NATIONAL ASSOCIATION FOR UNIFORMED SERVICES, RESERVE OFFICERS ASSOCIATION, NON-COMMISSIONED OFFICERS ASSOCIATION, MARINE CORPS LEAGUE, ARMY RESERVE ASSOCIATION, MARINE CORPS RESERVE ASSOCIATION, U.S. ARMY WARRANT OFFICERS ASSOCIATION, SPECIAL FORCES ASSOCIATION, JEWISH WAR VETERANS OF THE UNITED STATES,**
*Intervenors*

---

2015-3086

---

Petition for review of the Merit Systems Protection Board in No. DE-0707-15-0091-J-1.

---

Decided: May 9, 2017

———————————

ERIC RICHARD NITZ, MoloLamken LLP, Washington, DC, argued for petitioner. Also represented by ROBERT KELSEY KRY, JEFFREY A. LAMKEN; DEBRA LYNN ROTH, JAMES PHILIP GARAY HEELAN, JULIA HELEN PERKINS, Shaw, Bransford & Roth P.C., Washington, DC.

MARK R. FREEMAN, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by MARK B. STERN; HILLARY STERN, BENJAMIN C. MIZER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington DC; HANSEL JAIDEV CORDEIRO, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

MICHAEL T. MORLEY, Coolidge-Reagan Foundation, Washington, DC, argued for intervenors.

———————————

Before PROST, *Chief Judge*, CLEVENGER and CHEN, *Circuit Judges.*

PROST, *Chief Judge.*

Sharon M. Helman, the former Director of the Phoenix Veterans Affairs Health Care System, appeals a decision of the Merit Systems Protection Board ("MSPB" or "Board"). The Deputy Secretary of the Department of Veterans Affairs ("DVA") removed Ms. Helman from her position under 38 U.S.C. § 713, and a MSPB administrative judge subsequently affirmed her removal. Ms. Helman sought review from the full Board. Citing § 713(e)(2), the Board refused to take any further action on Ms. Helman's appeal. Ms. Helman timely petitioned for our review of the constitutionality of the statute governing her removal and the process afforded to her under that statute.

We conclude that by prohibiting Board review under § 713(e)(2), Congress vests significant authority in an administrative judge in violation of the Appointments Clause. We also conclude that § 713(e)(2) and two related portions of § 713(e) are severable and, thus, the proper remedy for the constitutional flaw in § 713 is to sever those portions of the statute and leave the remainder of the statute intact. We remand for the MSPB to take appropriate action on Ms. Helman's petition for review of the administrative judge's initial decision.

## BACKGROUND

### I

In 2014, Congress began investigating reports that senior executives in the DVA had manipulated hospital performance metrics by maintaining secret wait lists of veterans who needed care. Dissatisfied with the pace of the DVA's disciplinary efforts, legislators proposed a variety of reforms, including measures designed to make it easier for the Secretary of Veterans Affairs to remove or demote senior executives in the agency for poor performance. These proposals culminated in the enactment of § 707 of the Veterans Access, Choice, and Accountability Act, which sets forth new rules for the removal or transfer of DVA Senior Executive Service employees. Veterans Access, Choice, and Accountability Act of 2014, Pub. L. No. 113-146, § 707, 128 Stat. 1754, 1798 (2014) (codified in relevant part at 38 U.S.C. § 713) ("Veterans Access Act").

Prior to the enactment of the Veterans Access Act, senior executives at the DVA could only be removed according to the removal scheme established by the Civil Service Reform Act of 1978, 5 U.S.C. § 1101 *et seq*. *See id*. §§ 7541–43. Under Title 5, the DVA is limited to taking an adverse action against a senior executive only "for misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position

in a transfer of function." *Id.* § 7543(a). The executive against whom such an action is taken is entitled to appeal to the MSPB, *id.* § 7543(d), to a hearing, *id.* § 7701(a)(1), and to be represented by an attorney, *id.* § 7701(a)(2), among other rights. Upon receiving the case, "[t]he Board may hear any case appealed to it or may refer the case to an administrative law judge . . . or other employee of the Board designated by the Board to hear such cases." *Id.* § 7701(b)(1). These employees of the Board are called administrative judges. *See* 5 C.F.R. § 1201.4 (defining the term "judge" to include such employees). In practice, the Board refers most, if not all, of its cases to administrative judges. *See* MSPB, *Judge's Handbook* 10 (2007). According to MSPB policy, the administrative judge will adjudicate the appeal and render an initial decision within 120 days. *Id.* at 1. The executive then has thirty days to petition the Board to review the initial decision. 5 U.S.C. § 7701(e)(1). Once the Board issues a final decision, the executive may then file a petition for review of the final decision in this court. *Id.* § 7703.

As part of the Veterans Access Act, Congress created a new executive removal scheme, codified at 38 U.S.C. § 713, to make it easier for the DVA to remove or demote its senior executives. At a high level, § 713 differs from the removal provisions of Title 5 in two respects: (1) it creates a process for the removal or transfer of senior executives by the Secretary for poor performance with limited executive protections, 38 U.S.C. § 713(a)–(d)(1), (f)–(g); and (2) it creates a process for an expedited MSPB review of a removal or transfer carried out under the statute, *id.* § 713(d)(2)–(e).

First, with respect to the removal and transfer process, § 713 provides the Secretary with broader authority to remove or transfer a senior executive if "the *performance* or misconduct of the individual warrants such

removal." *Id.* § 713(a)(1) (emphasis added).[1] A senior executive removed or transferred under § 713 is not entitled to the thirty-day written notice requirement or the seven-day response period that are provided under Title 5. *Id.* § 713(d)(1). Section 713 eliminates the moratorium on removals and transfers within 120 days of the appointment of a new agency head or, in some circumstances, the employee's most immediate supervisor. *Id.* § 713(f)(2). Executives transferred under § 713 may only receive the annual rate of pay applicable to their new position, *id.* § 713(b)(1), whereas Title 5 allows the individual to receive the highest of various basic rates of pay, 5 U.S.C. § 3594(c)(1)(B)(i)–(iii). Finally, § 713 prohibits placing executives on administrative leave. 38 U.S.C. § 713(b)(2).

Second, with respect to the MSPB appeal process, § 713 creates an accelerated timeline for appeals to the MSPB and shortens the MSPB appeals themselves. For example, where Title 5 provides thirty days to appeal an adverse action to the MSPB, 5 C.F.R. § 1201.22(b)(1), § 713 only provides seven, 38 U.S.C. § 713(d)(2)(B). Section 713 also requires the MSPB, pursuant to 5 U.S.C. § 7701(b)(1), to refer all appeals to an administrative judge who "shall issue a decision not later than 21 days after the date of the appeal." 38 U.S.C. § 713(e)(1). Additionally, the removal or transfer may not be stayed during the appeal to the administrative judge, *id.* § 713(e)(4), and the Secretary and the Board must ensure that the appeal is expedited, *id.* § 713(e)(6); *see also* Veterans Access Act § 707(b)(1), (3), 128 Stat. at

---

[1] "[M]isconduct includes neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function." 38 U.S.C. § 713(g)(2). The term "performance," which does not appear in § 7543(a) of Title 5, is undefined in § 713.

1754, 1800 (requiring the Board to promulgate rules for the processing of expedited appeals under § 713 and authorizing the Board to waive any regulation as necessary for that purpose). Section 713 denies senior executives any type of pay, bonus, or benefit during their appeals. 38 U.S.C. § 713(e)(5). In contrast to Title 5, administrative judges' decisions under § 713 are final and Board or judicial review is prohibited. *Id.* § 713(e)(2) ("Notwithstanding any other provision of law, including section 7703 of title 5, the decision of an administrative judge . . . shall be final and shall not be subject to any further appeal.").

## II

Ms. Helman was the Director of the Phoenix Veterans Affairs Health Care System, which is operated by the DVA. On November 10, 2014, Deputy Secretary Gibson notified Ms. Helman in writing of a pending action to remove her from federal service pursuant to § 707 (codified at 38 U.S.C. § 713). The Deputy Secretary identified a number of charges of "misconduct that warrant[ed] removal from federal service." J.A. 90–93. The charges included: lack of oversight, conduct unbecoming a senior executive, and failure to report gifts. Ms. Helman had "five business days after receipt of th[e] notice to submit a written response showing why the charges [we]re unfounded and any other reasons why [her] removal should not be effected." J.A. 94. She timely responded through counsel. On November 24, 2014, Deputy Secretary Gibson notified Ms. Helman that, after "carefully consider[ing] [he]r written reply and the evidence," he had "decided to remove [her] from federal service effective immediately." J.A. 112–14.

Ms. Helman appealed her removal to the MSPB. Within the 21-day period required by § 713(e)(1), the designated administrative judge reviewed the parties' arguments and evidence and issued a written decision

analyzing each charge and specification. The administrative judge declined to sustain the charge of lack of oversight, but found that the agency had proved the remaining charges. The administrative judge also discussed and rejected each of Ms. Helman's affirmative defenses, including her contention that her removal violated her constitutional right to due process. Ms. Helman sought an extension of time to appeal the administrative judge's decision to the full Board. The Clerk of the Board, citing the finality of the administrative judge's decision under § 713(e)(2), indicated that the MSPB would take no further action on her appeal. Ms. Helman subsequently filed this petition for review.

Veterans of Foreign Wars et al. moved this court for permission to intervene, or at a minimum, to participate as amici curiae in this appeal.[2] Ms. Helman and the government both opposed the motion to intervene but did not oppose allowing participation as amici. This court, concluding that intervention was warranted in the unique circumstances of this case, granted the motion to intervene and allowed for supplemental briefing.

## DISCUSSION

We generally have jurisdiction over appeals of a final decision of the MSPB under 28 U.S.C. § 1295(a)(9), pursuant to 5 U.S.C. § 7703(b)(1). Ms. Helman and the

---

[2] The intervenors are Veterans of Foreign Wars, AMVETS, Iraq and Afghanistan Veterans of America, National Association for Uniformed Services, Reserve Officers Association, Non-Commissioned Officers Association of the United States, Marine Corps League, Army Reserve Association, Marine Corps Reserve Association, U.S. Army Warrant Officers Association, Special Forces Association , and Jewish War Veterans of the United States (collectively, "Intervenors").

government agree that Ms. Helman properly seeks review in this court of a "final order or decision of the Board" within the meaning of § 7703(b)(1)(A) and that § 713(e)(2) cannot preclude judicial review of Ms. Helman's constitutional claims. Intervenors maintain, however, that this court does not have jurisdiction—not even to review Ms. Helman's constitutional claims—because of the language of § 713(e)(2). *See* 38 U.S.C. § 713(e)(2) ("the decision of an administrative judge . . . shall be final and shall not be subject to any further appeal"). We have considered the Intervenors' arguments and find them to be unpersuasive.

The Supreme Court has consistently declined to interpret provisions like § 713(e)(2) to preclude judicial review of colorable constitutional claims. *See Webster v. Doe*, 486 U.S. 592, 603 (1988); *Johnson v. Robison*, 415 U.S. 361 (1974). The Court has explained that "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." *Webster*, 486 U.S. at 603. Here, while Congress intended to prohibit judicial review of the merits of MSPB administrative judges' decisions, nothing in the statute or its legislative history indicates that Congress intended to take the additional step of precluding judicial review of constitutional questions. Accordingly, we have jurisdiction over Ms. Helman's constitutional claims under 28 U.S.C. § 1295(a)(9), pursuant to 5 U.S.C. § 7703(b)(1).

I

Ms. Helman asks this court to review the constitutionality of 38 U.S.C. § 713. In particular, she contends that § 713 violates the Appointments Clause because it impermissibly "vest[s] in an administrative judge—a mere employee and career civil servant—*unreviewed discretion* to implement or overturn the decision of a cabinet-level official." Pet'r's Br. 1. Ms. Helman argues in the alternative that the administrative judges' exercise of this authority violates the separation of powers required by the

Constitution. The alternative argument is based on Ms. Helman's contention that the administrative judge is insulated by multiple layers of for-cause removal restrictions, in violation of *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477 (2010). The government, for its part, agrees with Ms. Helman that such "final and unreviewable discretion" is "significant authority [that] can only be exercised by a properly appointed Officer of the United States." Resp't's Br. 19. The government agrees with Ms. Helman that an MSPB administrative judge is not appointed as an officer of the United States. Thus, the government concedes, § 713 is "inconsistent with the Appointments Clause" to the extent that it vests a federal employee with the authority to render final, unreviewable decisions. *Id.* The government points out, correctly, that Ms. Helman's alternative separation of powers argument is moot in this appeal if we find a violation of the Appointments Clause.

Intervenors, in contrast, argue that § 713 is constitutional. First, Intervenors contend that MSPB administrative judges are not officers of the United States because they do not "exercise[] a 'portion of the sovereign authority of the federal Government.'" Intervenors' Br. 12. Rather, Intervenors maintain, MSPB administrative judges only "review certain employees' terminations" and that "does not implicate the Government's sovereign authority to punish, regulate, license, or otherwise execute or enforce federal law against the public." *Id.* at 13. Second, Intervenors argue that § 713 does not confer "significant authority" upon administrative judges because "[t]he authority to make decisions relating to an extremely small group of people, under exceedingly rare circumstances, concerning a narrow range of employment-related issues can hardly be deemed 'significant authority.'" *Id.* Finally, Intervenors maintain that, even if MSPB administrative judges are inferior officers, their appointment is constitutionally valid because (1) "de-

partment heads [are] able to delegate their authority to appoint inferior officers," or (2) "MSPB cured any constitutional defects in [the administrative judge's] appointment by implicitly ratifying it over the course of his employment throughout the past nine years." *Id.* at 14.

The parties also suggest varying remedies to the alleged constitutional flaw in § 713. The government argues that because "[t]he core of the constitutional defect in [§] 713 is the provision that renders the decision of the administrative judge final and unreviewable by the Board," Resp't's Br. 40, this court need only sever that provision and "two related portions of [§] 713(e) whose operation is expressly keyed to the finality of the administrative judge's decision," *id.* at 42. Ms. Helman contends that § 713 must be invalidated in its entirety because severance "would produce a statute that Congress would not have enacted, rewrites a congressional compromise, and directly contravenes Congress's goals." Pet'r's Reply Br. 2. Intervenors argue, if we are to find a portion of § 713 unconstitutional, that the best course of action is to "invalidate the MSPB's delegation of its authority to hire AJs and give the MSPB an opportunity to directly appoint, or ratify the appointment of, [the administrative judge who presided over Ms. Helman's hearing]." *Id.* at 13–14 (internal citation omitted).

In order to address the constitutionality of § 713, we first identify the constitutional flaw, if any, in the statute. With respect to this question, we agree with Ms. Helman and the government and conclude that by prohibiting Board review, Congress vests significant authority in an administrative judge in violation of the Appointments Clause. We carefully considered the Intervenors' arguments on this point but find them to be unpersuasive. Second, upon identifying the portions of the statute that are indeed unconstitutional, we determine whether those invalid portions are severable from the remainder of the statute. In addressing this question, we agree with the

government that the problematic portions of the statute are severable and, thus, the proper remedy to the constitutional flaw in § 713 is to sever those portions of the statute and leave the remainder intact. We carefully considered the Intervenors' remedial arguments but find them to be unpersuasive. Finally, once we conclude that the invalid portions of the statute are severable, we determine whether actions taken under the original statute, as enacted, must be vacated. We conclude that the Secretary's decision to remove Ms. Helman and the administrative judge's affirmance of that decision, both under § 713 as enacted, may stand.

We address the constitutionality of 38 U.S.C. § 713 by discussing each step in turn.

## A

The Appointments Clause provides that:

> [The President] . . . shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . Officers of the United States . . . but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II, § 2, cl. 2. "Officers of the United States, does not include all employees of the United States." *Buckley v. Valeo*, 424 U.S. 1, 126 n.162 (1976) (per curiam). "Employees are lesser functionaries subordinate to officers of the United States," *id.*, and are not "selected in compliance with the strict requirements of Article II." *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 880 (1991). Neither Ms. Helman nor the government contends that MSPB administrative judges are

constitutionally appointed officers of the United States; they are hired as employees.[3]

"The Appointments Clause prevents Congress from dispensing power too freely." *Id.* Congress may not vest authority in employees such that "the degree of authority exercised by the [employee is] so 'significant' that it [i]s inconsistent with the classifications of 'lesser functionaries' or employees." *See id.* at 881. Thus, there are "duties that may be performed by an employee not subject to the Appointments Clause," and then there are "significant" duties that can only be performed by officers of the United States. *Id.* at 882. The Supreme Court in *Freytag* examined the degree of authority considered "significant." *See id.* at 880–82.

One of the questions in *Freytag* was whether a special trial judge for the Tax Court is an employee or an inferior officer of the United States. *Id.* at 880. In addressing this question, the Court examined, as a whole, "the signifi-

---

[3]    MSPB administrative judges are employed under the Board's general authority to hire "employees." 5 U.S.C. §§ 1204(j), 3101. The MSPB's Director of Financial and Administrative Management is charged with hiring MSPB administrative judges. *See* MSPB, *Organization, Functions & Delegations of Authority* ¶ 2.5.2.2 (Apr. 2011) (reflecting a general delegation of hiring authority to "[e]ffect appointments, make employment commitments, [and] arrange reporting dates" to the Office of Financial and Administrative Management). The Office of Financial and Administrative Management is an office of the Board's headquarters staff that handles a variety of administrative, budgetary, and personnel functions for the agency as a whole. 5 C.F.R. § 1200.10(b)(8). To be clear, we reserve judgment as to whether administrative judges are employees for purposes of the Appointments Clause.

cance of the duties and discretion that special trial judges possess" to determine whether the special trial judges were employees or inferior officers. *Id.* at 881–82. The Court determined that the special trial judges were inferior officers, in part, because special trial judges "perform more than ministerial tasks"; they carry out "important functions." *Id.* at 881–82. Those important functions performed by the special trial judges included "tak[ing] testimony, conduct[ing] trials, rul[ing] on the admissibility of evidence, and hav[ing] the power to enforce compliance with discovery orders." *Id.* Additionally, "[i]n the course of carrying out these important functions, the special trial judges exercise[d] significant discretion." *Id.* at 882.

In the alternative, the Court also found that the special trial judges were inferior officers because in some cases, "the Chief Judge may assign special trial judges to *render the decisions* of the Tax Court in declaratory judgment proceedings and limited-amount tax cases." *Id.* (emphasis added). Having the authority to render the decisions of the Tax Court, and thereby "exercise independent authority," also made the special trial judges inferior officers. *Id.* at 882.

Against this backdrop, we must determine whether, through § 713, the authority Congress purports to vest in MSPB administrative judges is significant authority in violation of the Appointments Clause.

Under the conventional Title 5 MSPB appeal process, the Board typically refers its cases to an administrative judge, 5 U.S.C. § 7701(b)(1), but once the administrative judge makes an initial decision, the Board may review the decision and render its own final decision, *id.* § 7701(e)(1). Through this framework, Title 5 permissibly vests in the members of the Board—appointed by the President and confirmed by the Senate, 5 U.S.C. § 1201—the authority to render a final decision overturning another officer's

decision.   5 U.S.C. § 7701.   By contrast, § 713 prohibits any review of the administrative judge's decision, thereby vesting this authority entirely in an administrative judge.

Both Ms. Helman and the government maintain that the authority Congress vests in an administrative judge via § 713—final and unreviewable discretion to affirm or overturn the decision of a cabinet-level official—is significant.  We agree.  As in *Freytag* where, in some instances, the special trial judges could render the decisions of the Tax Court, the authority here to render the decisions of the MSPB, and thereby exercise significant discretion and independent authority, is also a "significant" duty that can only be performed by officers of the United States. Indeed, granting such final decision-making authority and giving the administrative judge the last word on affirming or overturning a cabinet-level official directly conflicts with the definition of employee:  a lesser functionary who is *subordinate* to officers of the United States. *Freytag*, 501 U.S. at 881.  An administrative judge with this authority is no longer subordinate to any officer. Further, when we compare the § 713 authority to render a decision to implement or overturn the Secretary's decision to the functions found to be important in *Freytag*, it is clear that this § 713 decision making authority is also an "important function," and surely "more than a ministerial task."  *See id.*

Thus, we conclude that the authority to render a final decision, affirming or overturning the Secretary of the DVA's removal decision, is a significant duty that can only be performed by officers of the United States.  Through § 713, Congress purports to vest this significant authority in administrative judges who are hired as employees. This is unconstitutional under the Appointments Clause.

Accordingly, we declare invalid those portions of § 713 that are expressly keyed to the finality of the administrative judge's decision.   This includes § 713(e)(2) in its

entirety and portions of § 713(e)(3) and § 713(e)(5).[4]  *Cf. Alaska Airlines, Inc. v. Donovan*, 766 F.2d 1550, 1560 (D.C. Cir. 1985), *aff'd sub nom. Alaska Airlines, Inc. v. Brock*, 480 U.S. 678 (1987) (severing one portion of subsection 49 U.S.C. § 1552(f)(3) and leaving the remainder of the section—including the first sentence of the subsection—unaffected).  In particular, a portion of § 713(e)(3) is invalid because the word "final" creates a backdoor grant of final decision-making authority to MSPB administrative judges.  For example, the MSPB administrative judge may simply decline to render a decision within 21 days, thereby causing the employee's removal or transfer to become final.

B

Having concluded that § 713(e)(2) in its entirety and portions of § 713(e)(3) and § 713(e)(5) are unconstitutional, we must consider whether they are severable from the remainder of the statute.  Ms. Helman maintains that they are not and urges this court to invalidate § 713 in its

---

[4]   Removing the invalid provisions, § 713(e)(3) now reads as follows:  "**(3)** In any case in which the administrative judge cannot issue a decision in accordance with the 21-day requirement under paragraph (1), ~~the removal or transfer is final. In such a case,~~ the Merit Systems Protection Board shall, within 14 days ~~after the date that such removal or transfer is final~~, submit to Congress . . . ." 38 U.S.C. § 713(e)(3) (strikethrough added to indicate invalidated portion).  Similarly, § 713(e)(5) now reads as follows:  "**(5)** During the period beginning on the date on which an individual appeals a removal from the civil service under subsection (d) ~~and ending on the date that the administrative judge issues a final decision on such appeal~~, such individual may not receive any pay . . . ." *Id.* § 713(e)(5) (strikethrough added to indicate invalidated portion).

entirety. The government on the other hand, applying Supreme Court severability principles, maintains that the invalid portions are severable because the remainder of the statute is "fully operative as law and advances the ends that Congress sought to achieve by its enactment." Resp't's Br. 43. We agree with the government.

In exercising our power to review the constitutionality of a statute, we are compelled to act cautiously and refrain from invalidating more of the statute than is necessary. *Regan v. Time, Inc.*, 468 U.S. 641, 652 (1984). It is well established that "[t]he unconstitutionality of a part of an act does not necessarily defeat or affect the validity of its remaining provisions." *Champlin Ref. Co. v. Corp. Comm'n of State of Okl.*, 286 U.S. 210, 234 (1932). Therefore, we must "try to limit the solution to the problem, [by] severing any problematic portions while leaving the remainder intact." *Free Enter. Fund*, 561 U.S. at 508.

"Whether an unconstitutional provision is severable from the remainder of the statute in which it appears is largely a question of legislative intent, but the presumption is in favor of severability." *Regan*, 468 U.S. at 653. The traditional test for severability is well established: "[u]nless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *Buckley*, 424 U.S. at 108–09 (quoting *Champlin*, 286 U.S. at 234–35). To put it simply, we must "ask: Would the legislature have preferred what is left of its statute to no statute at all?" *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 330 (2006).

The Supreme Court has distilled the traditional test as follows: we must retain what is left of the statute if it is "(1) constitutionally valid, (2) capable of functioning independently, and (3) consistent with Congress' basic objectives in enacting the statute." *United States v.*

*Booker*, 543 U.S. 220, 258–59 (2005) (internal citations and quotation marks omitted). To answer these questions, we look to the language and structure of the Act and to its legislative history. *E.g.*, *Alaska Airlines*, 480 U.S. at 687.

Turning to our analysis, we first note that § 713 performs two overarching functions: (1) it creates a process for the removal or transfer of senior executives by the Secretary for poor performance with limited employee protections (the "Removal Provisions"), 38 U.S.C. § 713(a)–(d)(1), (f)–(g); and (2) it allows for an expedited MSPB review of such a removal or transfer carried out under the statute (the "Appeal Provisions"), *id.* § 713(d)(2)–(e). Ms. Helman asks us to invalidate the entire statute, yet the scope of her arguments is narrow and addresses only what remains of the statute's Appeal Provisions after severance. Accordingly, to address Ms. Helman's arguments and for purposes of our analysis, we will divide this issue into two parts. First, we consider whether the Appeal Provisions, as a whole, are severable from § 713 allowing us to retain, at a minimum, the Removal Provisions. Second, addressing Ms. Helman's arguments, we determine whether the specific unconstitutional portions of the Appeal Provisions—namely, § 713(e)(2) and related portions of § 713(e)(3) and § 713(e)(5)—are severable from the remaining Appeal Provisions.

1

It is clear that the Appeal Provisions, as a whole, are severable from § 713 and, thus, at a minimum we must retain the Removal Provisions. As discussed below, looking to the language, structure, and legislative history of the statute, we conclude that the Removal Provisions are both capable of functioning independently and consistent with Congress's basic objectives in enacting the statute.

First, the Removal Provisions make up a distinct part of the statute and relate to the process the Secretary must follow in order to remove or transfer his senior executives and the protections, if any, afforded to those executives while the adverse action is pending. *Id.* § 713(a)–(d)(1), (f)–(g). The Appeal Provisions, in contrast, relate to the MSPB appeal process afforded to senior executives after the adverse actions taken against them under the Removal Provisions are complete. *Id.* § 713(d)(2)–(e). The Removal and Appeal Provisions also operate differently. For instance, the Secretary initiates an adverse employment action pursuant to the Removal Provisions, *id.* § 713(a)(1), but the executive optionally appeals that action under the Appeal Provisions, *id.* § 713(d)(2); 5 U.S.C. § 7701(a). In sum, the ability of the Secretary to remove executives under the Removal Provisions for poor performance is not dependent on their subsequent entitlement to a MSPB appeal once their removal is complete. Indeed, the original House version of the Act consisted of a process for the removal or transfer of senior executives by the Secretary for poor performance without providing for any appeal process. H.R. 4031, 113th Cong. (2d Sess. 2014). Thus, while in a general sense, the Removal Provisions and the Appeal Provisions are parts of a larger system, the language and the general scope of § 713 indicate that the Removal Provisions are capable of functioning independently from Appeal Provisions.

The Removal Provisions are also consistent with Congress's basic objectives in enacting the statute. First, it is evident that Congress regarded providing the Secretary with broad discretion to remove or transfer senior executives for poor performance as a key aspect of the statute.[5]

---

[5]    Under Title 5, the DVA is limited to taking an adverse action against a senior executive only "for misconduct, neglect of duty, malfeasance, or failure to accept a

That core part of the Removal Provisions remained constant across all versions of the legislation. *Compare* H.R. 4031, 113th Cong. (2d Sess. 2014) ("[T]he Secretary may remove any individual from the Senior Executive Service if the Secretary determines the performance of the individual warrants such removal."), *with* S. 2450, 113th Cong. (2d Sess. 2014) (same). The Removal Provisions remain fully intact as part of the constitutional remainder of § 713, exactly as Congress enacted them, providing a process for the removal or transfer of senior executives by the Secretary for poor performance with limited employee protections. At a minimum, therefore, we must retain the Removal Provisions. We cannot agree with Ms. Helman that § 713 should be invalidated in its entirety.

2

The more difficult question is whether we may retain the majority of the Appeal Provisions, and sever only those portions that are unconstitutional, or whether all of the Appeal Provisions must fall together. To resolve this question we must determine whether the unconstitutional provisions are severable from the remainder of Appeal Provisions. To overcome the strong presumption of severability, Ms. Helman must show us that it is evident that Congress would not have passed the Appeal Provisions of § 713 without prohibiting review of the administrative judges' decisions. *See Regan*, 468 U.S. at 653.

The remaining Appeal Provisions are capable of functioning without the unconstitutional prohibition of review of the administrative judges' initial decisions. Upon severing the invalid portion of § 713, the remaining MSPB appeal process largely follows the traditional appeal process under Title 5. 38 U.S.C. § 713(e)(1), (3)–(6);

---

directed reassignment or to accompany a position in a transfer of function." 5 U.S.C. § 7543(a).

5 U.S.C. §§ 7701, 7703.  Indeed, the only practical differences between them function to expedite the § 713 MSPB appeals process in service of Congress's objectives in enacting the statute.  *See, e.g.*, 38 U.S.C. § 713(d)(2)(B), (e)(1), (e)(4)–(6).

Ms. Helman argues that the revised § 713 appeal process "mandates an extra review layer beyond what pre-existing [Title 5] processes required" because it *requires* the Board to refer the appeal to the administrative judge. Pet'r's Reply Br. 13.  As Ms. Helman herself concedes, however, in practice, the Board refers most, if not all, of the appeals to administrative judges.  *See* Pet'r's Br. 5–6 ("Typically, appeals are received in the appropriate MSPB regional office, and the chief administrative judge for the region (or a designee) assigns the appeal to an administrative judge." (citing 5 C.F.R. § 1201.4(d); MSPB, *Judge's Handbook* 10)).  In practice, therefore, this is a distinction without a difference.

Second, Ms. Helman contends that the revised § 713 appeal process is problematic because it "compresses the most labor- and time-intensive part of the external review process into 21-days [sic], but imposes no deadline on ensuing steps."  Pet'r's Reply Br. 12.  We find this feature, however, supports severability.  The ensuing steps of review Ms. Helman refers to are performed pursuant to Title 5.  *See* 38 U.S.C. § 713(d)(2)(A); 5 U.S.C. § 7701(e)(1)(A).  Therefore, those steps being equal, if an administrative judge has 120 days to make a decision under Title 5 and only 21 days under § 713, the latter is more in line with Congress's objective of expediting the MSPB appeal process.  Thus, the Appeal Provisions are clearly capable of functioning without the unconstitutional prohibition of review of the administrative judges' initial decisions.

The remaining Appeal Provisions are also consistent with Congress's basic objectives in enacting the statute.

Ms. Helman argues that "[t]he text and history of § 713 reveal Congress's principal goal in enacting the statute [was] to expedite the *final removal* of senior executives terminated from the VA." Pet'r's Reply Br. 7. In service of that goal, she maintains, "Congress sought to create a single-layer, expedited administrative review process of finite duration—completed within 21 days, upon pain of the dismissal becoming final—with no further review." *Id.* at 12. Ms. Helman compares the appeal process Congress originally enacted to the one that results from the remaining Appeal Provisions after severance. She insists that the revised appeal process, "authorizing review by the administrative judge, the Board, and this Court—with *no deadline* for that process to conclude," "cannot be reconciled with Congress's intent." *Id.* Ms. Helman also argues that we must conclude that § 713 is not severable "given the vast number of alternatives Congress might have adopted to achieve the statutory goal of expedited decision making, while still avoiding § 713's constitutional infirmities." *Id.* at 15. We disagree.

It is certainly the case that when Congress wrote the Appeal Provisions, it intended to create a single-layer, expedited administrative review process of finite duration, with no further review. "[G]iven today's constitutional holding, [however,] that is not a choice that remains open." *Booker*, 543 U.S. at 265. The appeal process Congress originally enacted has a constitutional flaw and is not a viable option. We must, therefore, "determine Congress' likely intent *in light of today's holding.*" *Id.* We do not ask whether Congress would have preferred the appeal process originally enacted to that which results from the remaining provisions of § 713 after severance. It goes without saying that they would have. *See, e.g.*, *Alaska Airlines*, 480 U.S. at 685 n.7. Nor is the question whether Congress would have preferred what remains of § 713 after severance to a hypothetical statute. The number of alternative versions of the statute

that Congress *might* have adopted, or even may have actually proposed, also is not dispositive.[6] The question we must ask is whether Congress would have preferred the revised appeal process under what remains of the Appeal Provisions to nothing at all, i.e., to maintaining the status quo Title 5 appeal process. *See Ayotte*, 546 U.S. 320 at 330; *Alaska Airlines*, 480 U.S. at 685 n.7.

Looking to the remainder of the Appeal Provisions, it is clear that the revised appeal process advances the ends that Congress sought to achieve by the statute's enactment. The Appeal Provisions retain many other provisions that help to accomplish the same objectives Congress wished to achieve by prohibiting review of the administrative judges' decisions. In *New York v. United*

---

[6] Ms. Helman relies on *Randall v. Sorrell*, 548 U.S. 230 (2006), for the proposition that it is inappropriate to sever a portion of statute when there are a "vast number of alternatives Congress might have adopted" when faced with the statute's constitutional issues. Pet'r's Reply Br. 15–16. In that case, however, the Supreme Court concluded that it could not sever the invalid provisions because that "would require [the Court] to write words into the statute (inflation indexing), or to leave gaping loopholes (no limits on party contributions)." *Randall*, 548 U.S. at 262. It was, in part, because of these issues that the Court believed that it could not "foresee which of many different possible ways the legislature might respond to the constitutional objections [the Court] ha[d] found." *Id.* No such severability issues exist here. Indeed, with any statute there will always be a vast number of alternatives Congress might adopt in order to address a constitutional flaw in their original statute. Thus, the possibility of alternative legislation cannot guide our inquiry.

*States*, the Supreme Court concluded that "[c]ommon sense suggests that where Congress has enacted a statutory scheme for an obvious purpose, and where Congress has included a series of provisions operating as incentives to achieve that purpose, the invalidation of one of the incentives should not ordinarily cause Congress' overall intent to be frustrated." 505 U.S. 144, 186 (1992); *see also Booker*, 543 U.S. at 264 ("The system remaining after excision, while lacking the mandatory features that Congress enacted, retains other features that help to further these objectives."). The Supreme Court in *New York* held that, after severance, the Act was consistent with Congress's objective because it still included two incentives that operated in service of that objective. *Id.* at 187.

Here, if Congress enacted § 713 principally to expedite final removal, as Ms. Helman suggests, then it has included myriad provisions that operate to achieve that purpose. *See, e.g.*, 38 U.S.C. § 713(d)(2)(B), (e)(1), (e)(4)–(6). Therefore, the invalidation of one of these provisions, namely the provision prohibiting review of the administrative judge decision, does not cause Congress's overall intent to be entirely frustrated. What remains of § 713 includes *five* provisions that operate to achieve the purpose of expediting the final removal of senior executives terminated from the DVA. Specifically, the appeal process under § 713 is initiated sooner, 38 U.S.C. § 713(d)(2)(B), the administrative judges' decisions are completed in only 21 days, *id.* § 713(e)(1); the removal or transfer cannot be stayed during the appeal, *id.* § 713(e)(4); the senior executive is not entitled to any type of pay, bonus, or benefit while appealing the decision of removal, *id.* § 713(e)(5); and the Secretary and the Board must ensure that the appeal is expedited, *id.* § 713(e)(6); *see also* Veterans Access Act § 707(b)(1), (3), 128 Stat. at 1800 (requiring the Board to promulgate rules for the processing of expedited appeals under § 713

and authorizing the Board to waive any regulation as necessary for that purpose).  Thus, because the Appeal Provisions retain many provisions that help to accomplish the same objectives Congress wished to achieve by prohibiting review of the administrative judges' decisions, the remaining Appeal Provisions are consistent with Congress's basic objectives in enacting the statute.

Ms. Helman also argues that because the Appeal Provisions of § 713 are the result of a legislative compromise, Congress would not have enacted them without prohibiting review of the administrative judges' decisions.  According to Ms. Helman, "[t]he House explicitly rejected a version of § 713, initially proposed by the Senate, that contained all of the 'streamlined' procedures the government now invokes, but that lacked the limitation on post-termination review found in §713(e)(2)–(3)."  Pet'r's Reply Br. 14.  For her proposition that compromise legislation is immune to severability, Ms. Helman relies on *American Federation of Government Employees, AFL-CIO v. Pierce*, 697 F.2d 303 (D.C. Cir. 1982) (per curiam).  Her reliance is misplaced.

First, *Pierce* did not turn on the fact that the statute in question resulted, as most legislation does, from compromise.  The question was whether examination of the circumstances of the compromise revealed an answer to the "crucial inquiry whether Congress would have enacted other portions of the statute in the absence of the invalidated provision."  *Pierce*, 697 F.2d at 307 (quoting *Consumer Energy Council v. FERC*, 673 F.2d. 425, 442 (D.C. Cir. 1982)).

In *Pierce*, the legislation in question precluded an agency from using any funds prior to January 1, 1983, to effect reductions in force without the prior approval of the congressional Committees on Appropriations.  697 F.2d at 306.  The legislative provision was a single sentence that simply barred expenditures to effect reorganizations

before a specific date without the stated prior approvals. *Id.* The provision was held to violate the strictures in Article I of the Constitution on how legislation may be enacted because the legislation gave committees the power to legislate. *Id.* The district court, assuming the unconstitutionality of the committee prior approval power, nonetheless severed the one sentence statute by treating the committee prior approval provision as unconstitutional but still reading the statute to bar all use of funds for reorganizations prior to the January 1, 1983 date. *Id.* at 304. Accordingly, the district court enjoined a 1982 reorganization plan at the Department of Housing and Urban Development ("HUD"). *Id.*

In an expedited appeal, the D.C. Circuit reversed the district court's injunction order on the ground that there was not a single hint in the legislative history that Congress intended to restrict funding for all attempts by HUD to reorganize prior to the stated date. *Id.* at 307. The only known key to any defunding was the absence of prior committee approval, and prohibition on funding was tied only to lack of prior committee approval. *Id.* Thus it was undeniable that Congress would not have enacted the ban on funding for reorganizations absent the prior committee approval stipulation, and severability was not an option. *Id.* at 307–08.

*Pierce* is no help to Ms. Helman and, when understood, actually works against her. Unlike in *Pierce*, in this case there is abundant statutory evidence that Congress had in mind a piece of legislation that even when severed could work to achieve Congressional purpose. Further, rather than invalidating a single sentence of the legislation as the court did in *Pierce*, Ms. Helman asks us to invalidate § 713 in its entirety—including all of the remaining Appeal Provisions and the constitutional Removal Provisions, which were contained in both the early House and Senate versions of § 713. This we cannot do, especially because the statute's single constitutional

flaw provides only a single feature of the expedited MSPB review under the § 713 Appeal Provisions. Second, unlike in *Pierce*, many other valid provisions also resulting from the legislative compromise remain intact after severance.[7] We are not persuaded therefore, that the legislative history casts doubt on any supposition that the House would have agreed to what remains of § 713. We conclude that it is not evident Congress would not have enacted what remains of § 713 without the unconstitutional provision prohibiting review of administrative judge decisions.

In sum, we conclude that we are not required to invalidate § 713 in its entirety. First, the Appeal Provisions, as a whole, are clearly severable from § 713, allowing us to retain the Removal Provisions. Second, the specific

---

[7] For example, the Conference Committee noted in its report:

> [T]he MSPB Administrative Judge [will] conclude their review within 21 days . . . the substitute also requires that if the senior executive is removed, and then appeals VA's decision, the senior executive is not entitled to any type of pay, bonus, or benefit while appealing the decision of removal. Furthermore, the substitute requires that if a senior executive is demoted, and then appeals VA's decision, the employee may only receive any type of pay, bonus, or benefit at the rate appropriate for the position they were demoted to, and only if the individual shows up for duty, while appealing the decision of demotion. The substitute requires that the MSPB submit to Congress a plan within 14 days of enactment of how the expedited review would be implemented.

H.R. Rep. No. 113-564, at 80 (2014) (Conf. Rep.).

unconstitutional portions of the Appeal Provisions—namely, § 713(e)(2) and related portions of § 713(e)(3) and § 713(e)(5)—are also severable from the remaining Appeal Provisions. Thus, upon severing § 713(e)(2) and the two related portions, § 713 remains fully operative as a law. Nothing in the statute's language, structure, and legislative history makes it evident that Congress, faced with the limitations imposed by the Constitution, would have preferred no statute *at all* to § 713 with a modified MSPB appeal process. We therefore must sustain the remaining provisions of § 713.[8]

## C

Anticipating the possibility that we might conclude that the invalid provisions of § 713 are severable, Ms. Helman argues that the appropriate relief in that instance would be to vacate her removal by the Deputy Secretary altogether and return this matter to the DVA. At the very least, she argues, we should vacate the administrative judge's initial decision. We disagree on both accounts.

First, Ms. Helman urges this court to vacate her removal entirely because the Deputy Secretary should be

---

[8] In a final effort against severability, Ms. Helman argues that § 713 must be invalidated in its entirety because what remains after severance is also unconstitutional. Ms. Helman argues that "[e]ven when subject to MSPB review, the authority exercised by administrative judges is sufficiently extensive to render them inferior Officers," in violation of the Appointments Clause and alternatively of the separation of powers doctrine. Pet'r's Reply Br. 20. The government submits, and we agree, that these questions are more appropriately dealt with by the MSPB in the first instance if Ms. Helman chooses to pursue them on remand.

allowed to elect, once again, whether to remove Ms. Helman under the "heavily modified" § 713 or the conventional Title 5 process. Pet'r's Reply Br. 26. We are not persuaded. For the reasons we have stated, the changes to § 713 engendered by this opinion do not create, as Ms. Helman claims, a "dramatically different removal scheme." *Id.* Indeed, the process the Deputy Secretary followed to remove Ms. Helman remains intact, exactly as Congress enacted it. 38 U.S.C. § 713(a)–(d)(1), (f)–(g). Accordingly, the Deputy Secretary's removal of Ms. Helman under § 713 will stand.

Second, Ms. Helman maintains that if we allow her removal by the Deputy Secretary to stand, then, at a minimum, we should vacate the administrative judge's decision under § 713 affirming her removal. Because § 713(e)(2) unconstitutionally prohibited the Board from reviewing the administrative judge's decision in this case, however, Ms. Helman has not yet had a chance to appeal the administrative judge's decision to the Board as provided by § 7701(e)(1)(A). Upon severing the offending portions of § 713, Board review of administrative judges' decisions is now permitted. Thus, we conclude that remanding to the Board for its review of the administrative judge's decision, rather than vacating that decision, is both appropriate and sufficient at this juncture.

## II

Ms. Helman also asks this court to review the constitutionality of the process she has been afforded thus far under 38 U.S.C. § 713.

In particular, Ms. Helman first contends that her pre-termination removal proceedings did not comply with due process because there was no meaningful consideration of her pre-termination response to the Secretary. For example, Ms. Helman maintains that "Deputy Secretary Sloan Gibson, who proposed and ultimately effected Ms. Helman's removal, did not consider with an 'open mind' Ms.

Helman's pre-termination response, as he was required to do." Pet'r's Reply Br. 28. Second, Ms. Helman contends that "the post-termination hearing provided by § 713 falls short of what the constitution requires." Pet'r's Br. 58. Specifically, because § 713(e)(1) requires administrative judges to issue decisions within 21 days, Ms. Helman argues that this "unreasonable deadline dramatically impeded Ms. Helman's ability to present a defense." Pet'r's Reply Br. 28. Further, Ms. Helman argues that she was caused "real harm" because § 713(e)(4) prevented her from requesting a stay of the administrative proceeding pending the conclusion of the criminal investigation into her conduct. Pet'r's Br. 60.

Ms. Helman had initially made both pre-termination and post-termination due process violation arguments to the MSPB. In his decision, the administrative judge assigned to Ms. Helman's case thoroughly discussed and rejected each of Ms. Helman's affirmative defenses, including that her removal violated her constitutional right to due process. *See* J.A. 53–58. The administrative judge specifically rejected Ms. Helman's argument that the Deputy Secretary was unwilling to give her arguments fair consideration. *See* J.A. 55. The administrative judge declined to opine on Ms. Helman's post-removal due process, however, stating that "it seems [Ms. Helman]'s due process challenges to these post-removal proceedings are all tantamount [to] a due process challenge to the statute itself. I lack the power to rule on the constitutionality of the enabling statute which provides the authority to hear this case in the first place." J.A. 57–58.

Having concluded that the invalid provisions of § 713 are severable and that administrative judges' decisions are now reviewable by the Board, we must also determine whether it is appropriate for this court to address Ms. Helman's due process defenses or whether the proper course is to remand to the Board for its review of these claims. Ms. Helman argues that if § 713 is severable, this

court "should not and cannot reach questions regarding [her] due process defense until such time as a properly appointed administrative judge and the Board itself has resolved them." Pet'r's Reply Br. 26. Ms. Helman argues that, especially where "a decision turns on factual and credibility determinations, the agency should address the issues in the first instance." *Id.* at 27.

We agree with Ms. Helman that an agency should address issues in the first instance. The doctrine of exhaustion of administrative remedies, which provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted," is well established in the jurisprudence of administrative law. *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006) (citing *McKart v. United States*, 395 U.S. 185, 193 (1969); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51 (1938)). Accordingly, we do not reach questions regarding Ms. Helman's due process defense and she is entitled to a review of the administrative judge's decision by the members of the Board. This review will naturally include a review of the administrative judge's decision as it pertains to questions regarding Ms. Helman's due process defense.

CONCLUSION

For the foregoing reasons, we conclude that by prohibiting Board review of administrative judges' decisions, Congress impermissibly vests through § 713 significant authority in administrative judges. Accordingly, we declare § 713(e)(2) and related portions of § 713(e)(3) and § 713(e)(5) invalid, but conclude that they are severable from the remainder of § 713. Thus, the proper remedy to the constitutional flaw in § 713 is to sever those portions of the statute and leave the remainder intact. Upon severing the offending portions of § 713, Board review of administrative judges' decisions is now permitted. Accordingly, the appropriate relief here is to remand to the

Board for its review of the administrative judge's decision affirming Ms. Helman's removal.  Ms. Helman is free to pursue before the Board her due process claims and the broader constitutional question of whether administrative judges hearing appeals subject to Board review under § 7701 of Title 5 are inferior officers.

We remand for the MSPB to take appropriate action on Ms. Helman's petition for review of the administrative judge's initial decision.

**REMANDED**

COSTS

The parties shall bear their own costs.