# United States Court of Appeals for the Federal Circuit

---

**ARIEL RODRIGUEZ,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2019-2025

---

Petition for review of the Merit Systems Protection Board in No. AT-0714-18-0735-I-1.

---

Decided: August 12, 2021

---

JAMES SOLOMON, Solomon, Maharaj & Kasimati, P.A., Tampa, FL, argued for petitioner.

IGOR HELMAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by REGINALD THOMAS BLADES, JR., ROBERT EDWARD KIRSCHMAN, JR., RICHARD POWERS, JOSHUA MARC SALZMAN.

---

Before LOURIE, BRYSON, and O'MALLEY, *Circuit Judges*.

BRYSON, *Circuit Judge*.

In August 2018, petitioner Ariel R. Rodriguez was removed from his position with the Department of Veterans Affairs ("DVA") pursuant to 38 U.S.C. § 714. The Merit Systems Protection Board upheld his removal. We reverse and remand.

I

Prior to his removal, Mr. Rodriguez was employed as a Supervisory Consumer Affairs Specialist with the Patient Advocate's Office at the DVA's Bay Pines, Florida, facility. On March 13, 2018, a veteran patient visited the Patient Advocate's Office seeking assistance regarding a co-payment on a medical bill. Mr. Rodriguez and the patient engaged in a confrontation that escalated to the point that Mr. Rodriguez summoned VA Police Service officers. During the confrontation, Mr. Rodriguez yelled at the patient and used profanity. After the police officers arrived, they directed Mr. Rodriguez to leave the reception area and ultimately had to escort him back to his office. However, Mr. Rodriguez subsequently returned to the reception area, where he again confronted the patient.

The DVA initiated an investigation of the incident, during which Mr. Rodriguez was temporarily relieved of his supervisory responsibilities in the Patient Advocate's Office. During his suspension, Mr. Rodriguez contacted Carrie Adams, one of his subordinates, and asked her to modify the witness statement she had submitted regarding Mr. Rodriguez's confrontation with the patient.

The DVA investigation was directed to allegations of verbal abuse, a code of conduct violation, and lack of candor by Mr. Rodriguez in connection with the March 13, 2018, incident. As part of the investigation, Mr. Rodriguez submitted a voluntary witness statement. He was later given an opportunity to amend that statement but declined to do so.

The DVA investigator made a series of findings. First, he found that Mr. Rodriguez engaged in patient abuse by yelling and using profanity directed at the patient and leaning over an office desk toward the patient in a threatening manner. Second, he found that Mr. Rodriguez violated the DVA Code of Conduct through his disruptive behavior with the patient and with the police officers who were summoned to deal with the incident. In particular, the investigator found that Mr. Rodriguez failed to follow the lead officer's instruction to return to his office, that the police had to escort Mr. Rodriguez to his office, and that Mr. Rodriguez returned to the reception area in order to re-engage with the patient. Third, the investigator found unsubstantiated the allegation that Mr. Rodriguez had attempted to coerce one of the police officers into changing his account of the incident. Fourth, the investigator found substantiated the allegation that Mr. Rodriguez had attempted to coerce Ms. Adams into changing her account of the incident. Specifically, the investigator found that Mr. Rodriguez had made statements to Ms. Adams that left her in fear of retaliation if she did not change her testimony. Fifth, the investigator found that Mr. Rodriguez had displayed a lack of candor in his written and verbal accounts of the incident and in denying that he had made the statements reported by Ms. Adams, including the statement that no harm would come to her if she helped him.

The investigator consulted the table of penalties in the DVA handbook and concluded that in light of the nature of the offenses and the presence of aggravating factors, the appropriate penalty was removal. The investigator identified the following aggravating factors: (1) Mr. Rodriguez was a supervisor; (2) his position as an advocate for patients was a sensitive one, and his conduct had the effect of compromising the trust associated with that position; (3) he had previously been disciplined for job-related misconduct; (4) he was a member of the Director's Office and was responsible for ensuring that his conduct was beyond

reproach; and (5) he was given two opportunities during the incident to de-escalate the situation but failed to do so.

On June 18, 2018, Teresa E. Kumar, the Associate Director of Patient Services at the Bay Pines facility, provided Mr. Rodriguez with a Notice of Proposed Removal based on three charges: (1) disruptive behavior toward a veteran patient; (2) conduct unbecoming a federal supervisor, consisting of his attempt to influence Ms. Adams's testimony regarding the incident; and (3) lack of candor, based on the fact that Mr. Rodriguez's account of the altercation deviated substantially from the accounts of the other witnesses to the incident.

Ms. Kumar stated in the Notice of Proposed Removal that she had determined that Mr. Rodriguez's conduct warranted removal "because the Agency cannot tolerate abusive conduct toward any patient and not only were you inappropriate with a Veteran patient but after others intervened to de-escalate the conflict you escalated it a second time." J.A. 38. She added that there was a substantial nexus between Mr. Rodriguez's misconduct and his job responsibilities as an advocate for veterans. In addition, she noted that in his role as a supervisor Mr. Rodriguez was expected "to model the highest level of professional conduct" and that as a member of the Director's Office staff he was "held to even a higher standard of proper conduct and professionalism." *Id.* Finally, she noted that in December 2017, Mr. Rodriguez had been disciplined for a separate violation in connection with his employment.

On August 24, 2018, after Mr. Rodriguez was given an opportunity to reply to the Notice of Proposed Removal, Suzanne M. Klinker, the Director of the DVA's Bay Pines Healthcare System, issued a decision removing Mr. Rodriguez effective August 30, 2018. Ms. Klinker sustained all three charges against Mr. Rodriguez, finding that they were all "supported by substantial evidence." J.A. 263. She added that in making her decision she had "reviewed the

reasons and analysis the proposing official provided in paragraph 2 of the Notice of Proposed Removal" regarding the justifications for the level of discipline set forth in the proposed removal, and that she "agree[d] with" and "adopt[ed]" the reasoning of the proposing official in reaching her decision that Mr. Rodriguez should be removed. *Id.*

Mr. Rodriguez appealed his removal to the Merit Systems Protection Board. Following a hearing in March 2019, the administrative judge who was assigned to the case upheld the removal action. The administrative judge stated that in order to sustain an adverse decision before the Board under 38 U.S.C. § 714, the DVA "must establish by substantial evidence that there is a factual basis for the charged conduct." J.A. 2. In addition, the administrative judge noted that in a proceeding under section 714, the Merit Systems Protection Board cannot mitigate the penalty imposed by the DVA, an authority that the Board enjoys under the general disciplinary procedures set forth in chapter 75 of Title 5. J.A. 2; *see* 38 U.S.C. § 714(d)(2)(B).

The administrative judge analyzed the three charges against Mr. Rodriguez and found that all three were supported by substantial evidence. J.A. 2–8. Mr. Rodriguez argued to the administrative judge that 38 U.S.C. § 714 violates the Appointments Clause of the Constitution because it deprives a Board administrative judge of the opportunity to remedy improper decisionmaking by the agency. The administrative judge declined to address that issue, however, on the ground that the Merit Systems Protection Board may not consider whether a statute is unconstitutional. J.A. 8–9.

The administrative judge rejected Mr. Rodriguez's claim that he was denied due process because the DVA's deciding official "only skimmed portions" of his written response to the charges levied against him. J.A. 9 (alterations omitted). Mr. Rodriguez's contention in that regard was based on the deciding official's poor recollection of Mr.

Rodriguez's written reply arguments during her deposition several months after Mr. Rodriguez's removal. The administrative judge noted that the deciding official testified that she had read the entirety of Mr. Rodriguez's written reply, and he found that "any gaps in her memory concerning its contents long afterward do not constitute a sufficient basis to conclude that statutory and constitutional due process requirements were not met." J.A. 9–10.

Finally, the administrative judge addressed two procedural arguments made by Mr. Rodriguez. First, Mr. Rodriguez argued that the DVA had misapplied section 714 by concluding that the statute authorized the DVA to discipline an employee as long as substantial evidence supports a finding of misconduct. While recognizing that the substantial evidence standard governs the Board's review of the DVA's actions under section 714, Mr. Rodriguez pointed out that the statute requires that the DVA itself must "determine[] the performance or misconduct of the covered individual warrants . . . removal, demotion or suspension." 38 U.S.C. § 714(a)(1). That standard, Mr. Rodriguez argued, requires the DVA to find that the misconduct in question was proved by at least a preponderance of the evidence. The administrative judge rejected that argument and concluded instead that the DVA was entitled to apply the "substantial evidence" test in deciding to remove an employee, "the same evidentiary standard . . . as pertains to the Board in adjudicating such appeals." J.A. 14.

Mr. Rodriguez's second asserted procedural error was that the DVA failed to consider what are referred to as the *Douglas* factors when sustaining Mr. Rodriguez's removal. *See Douglas v. Veterans Admin.*, 5 M.S.P.R. 280 (1980). The administrative judge concluded that because section 714 provides that the Board may not mitigate the penalty selected by the DVA, it would not make sense to require the agency official to "consider factors in mitigation under *Douglas*." J.A. 15. In a footnote, the administrative judge stated that even if he were to conclude that the Board may

consider the reasonableness of the agency's penalty, he "would find that the removal penalty in the present case is not 'grossly disproportionate' to the sustained misconduct." J.A. 15 n.7.

Mr. Rodriguez petitioned this court to review the administrative judge's decision.[1]

## II

Mr. Rodriguez lists eleven issues in the "Issues Presented" section of his brief, but in the argument section of his brief he has failed to present arguments regarding several of those issues.  Because issues not addressed in the argument section of a party's opening brief are considered waived, *see Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1379 (Fed. Cir. 2019), and *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006), we will address only the issues Mr. Rodriguez has presented in the argument section of his brief.

## A

We first address Mr. Rodriguez's argument that the administrative judge misinterpreted 38 U.S.C. § 714 when he ruled that "substantial evidence" is the proper standard for the DVA to apply in determining whether an employee has engaged in misconduct that justifies discipline.  On that issue, we agree with Mr. Rodriguez.

Section 714 was enacted in 2017 to provide an expedited set of procedures by which the Secretary of Veterans Affairs may remove, demote, or suspend DVA employees "if

---

[1]    At the time of the administrative judge's decision, the Merit Systems Protection Board lacked a quorum of at least two of its three members.  Mr. Rodriguez elected to petition for review by this court directly from the administrative judge's decision rather than first seeking review of the administrative judge's decision by the Board.

the Secretary determines the performance or misconduct of the covered individual" warrants such measures. 38 U.S.C. § 714(a)(1); *see Brenner v. Dep't of Veterans Affs.*, 990 F.3d 1313, 1317–18 (Fed. Cir. 2021).

Section 714 made several changes to the procedures previously applied in disciplinary actions taken against DVA employees. First, section 714 provides for expedited review of disciplinary actions covered by the statute. 38 U.S.C. § 714(d)(1), (d)(4). Second, it provides that on any appeal to the Merit Systems Protection Board, the administrative judge and the Board will review the Secretary's action under the "substantial evidence" standard; in cases covered by section 714, the DVA is not required to prove its case before the Board by a preponderance of the evidence, as is the case for employee disciplinary actions brought under chapter 75 of Title 5. *Compare* 38 U.S.C. § 714(d)(2)(A), (d)(3)(B), *with* 5 U.S.C. §§ 7513, 7701(c)(1)(B).[2] Third, section 714 removes from the Board's administrative judges and the Board itself the authority to mitigate the penalties imposed by the Secretary. 38 U.S.C. § 714(d)(2)(B), (d)(3)(C); *see Sayers v. Dep't of Veterans Affs.*, 954 F.3d 1370, 1374–76 (Fed. Cir. 2020).

The government argues that the references to "substantial evidence" in section 714 are not limited to the standard of review to be employed by administrative judges and the Board in reviewing section 714 disciplinary decisions. Instead, the government contends that the "substantial evidence" standard also defines the burden of proof

---

[2] Agency actions based on unacceptable employee performance under chapter 43 of Title 5 are subject to review by the Merit Systems Protection Board under the substantial evidence standard. *See* 5 U.S.C. §§ 4303, 7701(c)(1)(A).

for the agency to make those disciplinary decisions in the first instance.

The DVA has taken that position not only in litigation, but also in its internal guidance governing employee disciplinary matters. In a publication dated June 27, 2017, the DVA stated that for actions taken under section 714, "Substantial Evidence is the Standard of Proof," and that "'Substantial Evidence' means relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree, or evidence that a reasonable mind would accept as adequate to support a conclusion." DVA, Human Resources Management Letter No. 05-17-06, § 6.gg–hh, *available at* https://www.afge.org/contentassets/a91c998d3be44362a75c5c67c60852f7/full-policy-document-s.-1094-implementation.pdf.

In this case, the deciding official, Ms. Klinker, appears to have applied the "substantial evidence" standard when resolving the disputed facts and selecting a penalty. Although she did not discuss the appropriate standard of proof in any detail, she stated that she had found that all three charges against Mr. Rodriguez "were supported by substantial evidence." J.A. 263.[3]

---

[3]    In a vacuum, it might be possible to interpret the deciding official's statement that the charges against Mr. Rodriguez were supported by "substantial evidence" to mean, in the lay sense of that term, that the charges were supported by a great deal of evidence. The problem, however, is that the DVA has made quite clear in its Human Resources Management Letter No. 05-17-06 that it considers the proper burden of proof in section 714 cases to be "substantial evidence" and that it uses that term in its legal sense to mean evidence that a reasonable person might accept as adequate to support a conclusion. In light of that

The administrative judge was more explicit in finding that "substantial evidence" is the appropriate standard of proof for the DVA to employ under section 714. As noted, the administrative judge observed that section 714 had changed the standard of review for administrative judges and the Board in cases covered by that statute from a preponderance of the evidence to substantial evidence. The administrative judge concluded that there was no reason to require a different standard from the agency when making its initial disciplinary determination. On appeal to this court, the government defends the administrative judge's determination that substantial evidence is the appropriate standard of proof for the DVA to apply in employee disciplinary actions instituted under section 714.

We disagree. The references to "substantial evidence" in section 714 are all explicitly directed to the standard of review to be applied by administrative judges and the Board. Those references do not address the standard of proof to be applied by the DVA in making disciplinary determinations, nor does the remaining text of section 714 explicitly address the standard of proof in proceedings before the DVA. There is therefore no force to the government's reliance on the plain language of section 714 to support its argument that substantial evidence is the proper standard of proof for the DVA to apply in disciplinary actions governed by that statute.

To the contrary, the language of section 714 implies that the proper standard is the preponderance of the evidence. Section 714 provides that an employee may be removed, demoted, or suspended "if the Secretary determines the performance or misconduct of the covered individual

---

explicit endorsement of the "substantial evidence" test as the burden of proof, it would be pure speculation to suppose that the deciding official used that term in a lay sense to mean something entirely different.

warrants" such action.  In the case of a disciplinary action based on misconduct, the requirement that the Secretary "determine[]" that the misconduct in question warrants disciplinary action implies that the Secretary must find that it is likely, i.e., more likely than not, that the employee has engaged in the misconduct that justifies the proposed discipline.

More fundamentally, the government's argument is inconsistent with the well-established distinction between a burden of proof and a standard of review.[4]  "Preponderance of the evidence" is a burden of proof, while "substantial evidence" is a standard of review.  As explained by Professor Jaffe in a frequently cited article, the argument that "substantial evidence" is appropriate for use as a burden of proof "merges the function of factfinder with that of reviewing court:  it argues that the factfinder is to find for the Government if he concludes that this finding should not be reversed by a court.  But that is not the task of the factfinder, nor is it the attitude that he is to take toward his task."  Louis L. Jaffe, *Administrative Law*: *Burden of Proof and Scope of Review*, 79 Harv. L. Rev. 914, 915 (1966).

Courts have consistently drawn the same distinction. As the Supreme Court stated in *Woodby v. INS*, 385 U.S. 276, 282 (1966), "[t]he elementary but crucial difference between burden of proof and scope of review is, of course, a commonplace in the law."  The D.C. Circuit summarized the distinction between the two standards succinctly in *Whitney v. SEC*, 604 F.2d 676 (D.C. Cir. 1979), where the court wrote:

> [T]he burden of proof and the scope of review in administrative law cases, as in ordinary judicial proceedings, are separate matters.  The former is the

---

[4]    We use "burden of proof" and "standard of proof" interchangeably in this opinion.

measure of belief which legally must exist in the mind of the trier of fact in order to sustain a finding.  The scope of review, of course, marks the bounds of a reviewing court's authority to set aside factual findings, and review is customarily limited to ascertaining whether there is enough evidence of the legally correct sort to save the findings from irrationality.

*Id.* at 681 (footnote omitted); *see also Collins Secs. Corp. v. SEC*, 562 F.2d 820, 823 n.12 (D.C. Cir. 1977) ("[T]he 'substantial evidence' standard does not in any way dictate the appropriate burden of persuasion to be applied in a proceeding before the agency.").

Preponderance of the evidence has long been recognized as the traditional burden of proof in civil administrative proceedings.  *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 389–90 (1983) (preponderance of the evidence is the normal burden of proof in civil proceedings); *Steadman v. SEC*, 450 U.S. 91, 101 n.21 (1981) ("The use of the 'preponderance of evidence' standard is the traditional standard in civil and administrative proceedings."  (quoting *Sea Island Broad. Corp. of S.C. v. FCC*, 627 F.2d 240, 243 (D.C. Cir. 1980))).

In *Charlton v. FTC*, 543 F.2d 903 (D.C. Cir. 1976), the court addressed an issue similar to the one before us and held that "substantial evidence" is not the proper burden of proof in a disciplinary proceeding before an agency.  In that case, the FTC had determined that the appropriate burden of proof in a disciplinary action was substantial evidence.  The court firmly rejected that view.  Describing substantial evidence as "a totally incorrect standard of proof in passing on Charlton's blameworthiness," the court ruled that the agency "faltered grievously" in holding that its decision on a disciplinary action could be based on substantial evidence rather than a preponderance of the evidence.  *Id.* at 906–07.

The *Charlton* court explained that on judicial review of agency action, administrative findings must be sustained when supported by substantial evidence on the record as a whole, but "that rule implicates only the reviewing court; the yardstick by which the agency itself is to initially ascertain the facts is something else again. . . . [I]n American law a preponderance of the evidence is rock bottom at the factfinding level of civil litigation. Nowhere in our jurisprudence have we discerned acceptance of a standard of proof tolerating 'something less than the weight of the evidence.'" *Id.* at 907 (footnote omitted); *see also SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 379–83 (Fed. Cir. 1983) (Nies, J., concurring).

In *Steadman v. SEC*, 450 U.S. 91 (1981), the Supreme Court grappled with the poorly worded language of section 7(c) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 556(d), which provided that a "sanction may not be imposed or rule or order issued except on consideration of the whole record or those parts thereof cited by a party and supported by and in accordance with the reliable, probative, and substantial evidence." Despite the use of the term "substantial evidence," the Court declined to interpret the statute as adopting "substantial evidence" as the burden of proof for proceedings governed by section 7(c). Relying on the words "in accordance with," the Court held that the agency's decision must be "'in accordance with' the weight of the evidence, not simply supported by enough evidence 'to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.'" *Steadman*, 450 U.S. at 98–99 (quoting *Consolo v. FMC*, 383 U.S. 607, 620 (1966)). Thus, even in the face of the statute's explicit use of the term "substantial evidence," the Supreme Court refused to substitute that standard for "the traditional preponderance-of-the-evidence standard" as the burden of proof. *Id.* at 102.

In arguing that "substantial evidence" is the proper burden of proof for the DVA to apply in making disciplinary

determinations in section 714 cases, the government relies on a footnote in *Sayers v. Department of Veterans Affairs*, 954 F.3d 1370, 1374 n.4 (Fed. Cir. 2020). In that footnote we observed, correctly, that "nothing in [section 714] compels the VA to apply a substantial evidence standard for removal rather than a preponderance standard." *Id.* In dictum, we then added that "nothing [in the statute] prevents the VA from doing so," and that because the statute "leaves the proper standard to the VA's discretion, the VA did not err by choosing substantial evidence review." *Id.*

To the extent the government argues that we are bound by *Sayers*'s suggestion that the DVA is free to apply substantial evidence as the burden of proof in section 714 cases, we disagree. The footnote containing that suggestion is dictum, as it was not necessary to our analysis of section 714 and our conclusion that the statute could not be applied retroactively to Dr. Sayers. *See Sayers*, 954 F.3d at 1382.

There are strong reasons that section 714 should not be interpreted to endorse the use of substantial evidence as a burden of proof. To adopt substantial evidence as the applicable burden of proof in section 714 disciplinary cases would mean that the deciding official would be required to find that the employee had engaged in the charged misconduct as long as substantial evidence supports the charge, i.e., as long as a reasonable person might accept the evidence as adequate to support that conclusion. That is to say, the deciding official could (indeed, would be required to) find against the employee with regard to the charged misconduct even though the deciding official did not personally agree with that conclusion. That scenario would be at odds with the requirement that the deciding official, as the delegee of the Secretary, "determine" that the employee engaged in the misconduct justifying discipline, as required by section 714. It would also be contrary to the traditional principle that in order for an agency to take disciplinary action against an individual based on

predicate facts, it must find those facts; absent clear authority to the contrary, it is not enough for an agency to conclude merely that a reasonable person could make such a finding.

During oral argument, the government responded to questions on this point by saying, essentially, that it was unrealistic to suppose that a deciding official would impose punishment when the official did not conclude that it was more likely than not that the employee had committed the charged misconduct. In effect, the government argued that the distinction between the preponderance test and the substantial evidence test is inconsequential in this context.

The problem with the government's argument is that if there is no meaningful difference in practice between the preponderance test and the substantial evidence test, then there is no reason for the government to object to the use of preponderance of the evidence as the burden of proof in section 714 cases. On the other hand, if there is a meaningful difference between the two, then that difference would surface in the setting in which the deciding official did not believe the misconduct had occurred, or was unsure whether it had been proved, but believed that a reasonable person could have found that the misconduct took place. In that setting, we conclude that using substantial evidence as the burden of proof would not only violate the terms of section 714, but would be contrary to the well-established principle that preponderance of the evidence is the minimal appropriate burden of proof in administrative proceedings.[5]

---

[5] In certain circumstances, courts have held that the burden of proof in administrative proceedings is higher than a preponderance of the evidence. *See, e.g.*, *Herman & MacLean*, 459 U.S. at 389 (proof by clear and convincing evidence is applied in cases in which "particularly

There may be exceptional circumstances in which a lower burden of proof than preponderance of the evidence could legitimately be applied. Examples might include cases in which the issue is whether a person should be given a top-secret clearance despite serious concerns about the person's background. But those circumstances would be rare and would typically require an explicit directive to use a burden of proof lower than preponderance in order to justify departing from the traditional standard. Section 714 does not present such unusual circumstances, and it does not contain any language stating explicitly, or even implicitly, that the burden of proof in disciplinary actions should be substantial evidence.

The deciding official in this case characterized "substantial evidence" as the applicable burden of proof. And it is clear that the administrative judge approved of the agency's use of substantial evidence as the burden of proof, because the administrative judge concluded that the level of proof required of the agency should be the same as the standard of review by the Board. We therefore reverse the administrative judge's ruling on the burden of proof issue and remand for further proceedings on that issue. Presumably those further proceedings will include requiring the DVA's deciding official to determine whether the evidence as to each of the charges against Mr. Rodriguez satisfied the preponderance of the evidence standard of proof.

B

Mr. Rodriguez also contends that the administrative judge erred by refusing to review the penalty determination made by the DVA and in particular refusing to review the agency's failure to apply the *Douglas* factors.

---

important individual interests or rights are at stake."); *see also Woodby*, 385 U.S. at 282.

The administrative judge noted that although the Board has the authority to mitigate penalties in chapter 75 appeals, section 714 expressly deprives the Board of that authority. As a result, the administrative judge concluded, section 714 had the effect of depriving the Board of any power to review penalties imposed in DVA disciplinary actions. We rejected that position in *Sayers* and in other post-*Sayers* decisions, all of which were issued after the administrative judge's decision in this case. *See Brenner*, 990 F.3d at 1322–27; *Harrington v. Dep't of Veterans Affs.*, 981 F.3d 1356, 1358–59 (Fed. Cir. 2020).

The government argues that even though the Board may review the penalty determination, the Board is not required to analyze the factors enumerated in *Douglas* when reviewing the choice of penalty, nor is the DVA required to analyze those factors when selecting the penalty. We rejected that argument in *Connor v. Dep't of Veterans Affs.*, No. 21-1064 (Fed. Cir. Aug. 12, 2021), where we held that the Board must consider the relevant *Douglas* factors when reviewing a disciplinary action under section 714. We echo our holding in *Connor*.

Although section 714 provides that the Board may not mitigate penalties imposed under that statute, this court has made clear that the absence of mitigation authority does not deprive the Board of the authority to review penalties for substantial evidence. Further, the power to mitigate penalties by imposing a penalty that the Board regards as proper is distinct from the power to review and strike down the DVA's imposition of penalties that are arbitrary, capricious, an abuse of discretion, or not in accordance with law. *See Brenner*, 990 F.3d at 1323–24 (citing 5 U.S.C. § 7703(c)).

We explained in *Brenner* that an agency abuses its discretion when its decision "represents an unreasonable judgment in weighing relevant factors," and a decision is arbitrary and capricious "where the agency fails to

articulate a rational connection between the facts found and the choice made." 990 F.3d at 1324 (internal quotation marks omitted). As noted in *Sayers*, the Board's decision in *Douglas* itself was based on the principle set forth by the Supreme Court in *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971): For a reviewing tribunal to find a decision not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, that decision must have been based "on a consideration of the relevant factors and whether there has been a clear error of judgment," *id.* at 416. *See Douglas*, 5 M.S.P.R. at 301. Accordingly, because the Board must review the DVA's penalty selection in a section 714 case, that review must ensure that the DVA considered the relevant factors bearing on the penalty determination.

In prior cases, we have endorsed the Board's and agencies' use of the relevant *Douglas* factors to assist their selection of penalties in employee discipline cases under chapter 75. *See, e.g.*, *Higgins v. Dep't of Veterans Affs.*, 955 F.3d 1347, 1353 (Fed. Cir. 2020) ("To take adverse action against an employee, an agency must . . . demonstrate that the penalty imposed was reasonable in light of the relevant factors set forth in *Douglas v. Veterans Administration*." (cleaned up)); *Smith v. Gen. Servs. Admin.*, 930 F.3d 1359, 1369 (Fed. Cir. 2019) ("The penalty chosen by the agency must represent a responsible balancing of the relevant *Douglas* factors."); *Kumferman v. Dep't of the Navy*, 785 F.2d 286, 291 (Fed. Cir. 1986) ("It is not reversible error if the Board fails expressly to discuss all of the *Douglas* factors. . . . The Board need only determine that the agency considered the factors significant to the particular case." (citation omitted)). Accordingly, as we explained in *Connor*, because our chapter 75 case law demands consideration of the relevant *Douglas* factors in misconduct cases, and because section 714 also covers misconduct, the Board must consider the relevant *Douglas* factors when reviewing a disciplinary action under section 714.

As an alternative argument, the government contends that even if the administrative judge erred by holding that section 714 bars any Board review of the penalty imposed against Mr. Rodriguez, the error was harmless. In support of that argument, the government points to the administrative judge's statement that even if he were to conclude that the Board has the authority to review the reasonableness of the penalty in a section 714 case, he "would find that the removal penalty in the present case is not 'grossly disproportionate' to the sustained misconduct." J.A. 15 n.7.

The problem with the government's argument is that a penalty may be overturned not only because it is unreasonable on its face by being "unconscionably disproportionate" to the offense, *see, e.g.*, *Parker v. U.S. Postal Serv.*, 819 F.2d 1113, 1116 (Fed. Cir. 1987), but also because the deciding official did not weigh the relevant factors bearing on the appropriateness of the penalty, including the relevant *Douglas* factors, *see, e.g.*, *Higgins*, 955 F.3d at 1353. *See also Koester v. U.S. Park Police*, 758 F. App'x 925, 929–31 (Fed. Cir. 2019) ("We review arbitration decisions [under the same standards as if reviewing a decision from the Board]. . . . There is no reason to believe that the arbitrator failed to consider or independently assess any relevant *Douglas* factor. Moreover, the Park Police's removal penalty is not so harsh and grossly or unconsciously disproportionate to the offense that it amounts to an abuse of discretion for the arbitrator to have considered it reasonable.").

The administrative judge's statement may satisfy the requirement that the penalty not be unreasonable on its face, but it does not satisfy the second requirement, that the penalty be selected according to proper procedures, i.e., by considering the relevant *Douglas* factors. For that reason, the administrative judge's ruling on the penalty decision cannot be upheld.

## C

In addition to his statutory claims, Mr. Rodriguez raises several constitutional challenges to his removal.

### 1

1. Mr. Rodriguez contends that he was denied due process because of the manner in which his case was handled within the DVA. To the extent he claims that the DVA's use of the substantial evidence standard of proof constituted a due process violation, that claim is moot, as we have held that substantial evidence may not be used as the standard of proof in disciplinary actions under section 714.

Mr. Rodriguez next contends that he was effectively denied a right to reply to the charges against him because the deciding official, Ms. Klinker, merely "skimmed" his written response to those charges. Petitioner's Br. 46–48. Mr. Rodriguez bases his contention on Ms. Klinker's inability to recall details of Mr. Rodriguez's response while she testified before the administrative judge. The administrative judge addressed that issue and found that "any gaps in her memory concerning [the response's] contents long afterward do not constitute a sufficient basis to conclude that statutory and constitutional due process requirements were not met." J.A. 10.

The administrative judge presided over the videoconference hearing and had an opportunity to assess Ms. Klinker's credibility both generally and as to this issue. Because the administrative judge was far better situated than we are to assess Ms. Klinker's testimony, we decline to second-guess the administrative judge's finding that the gaps in Ms. Klinker's memory concerning the contents of Mr. Rodriguez's written response do not support his claim that Ms. Klinker failed to consider his written response and that he was therefore effectively denied the right to respond to the charges against him.

Mr. Rodriguez also argues that Ms. Klinker's written decision was not sufficiently detailed to satisfy due process requirements.    While the substantive portion of Ms. Klinker's removal decision was short, it referenced and adopted the pertinent provisions of the notice of proposed removal, which contained substantial detail regarding the charges against Mr. Rodriguez and the justifications for removing him.  *See* J.A. 263 (referencing J.A. 37–39).  The materials generated by the DVA and provided to Mr. Rodriguez were sufficient both to give him notice of the charges against him and to explain the decision to remove him.  Accordingly, we reject Mr. Rodriguez's due process claims predicated on alleged flaws in the proceedings before the DVA.

2. Mr. Rodriguez next argues that the delegation of the Secretary's removal and disciplinary authority to Ms. Klinker was improper because, "if the Board has been stripped of their ability to mitigate a severe penalty or overturn decisions they believe incorrect on a preponderance standard, then it forces the members of the Board— who are appointed by the President with the advice and consent of the Senate—to rubber stamp decisions by mere employees and/or inferior officers that they believe are wrongly decided."  Petitioner's Br. 31.

On its face, that argument appears to be an objection to the delegation of authority from the Secretary of Veterans Affairs to Ms. Klinker, the Director of the Bay Pines VA Medical Center.  The implication of the argument is that if the Secretary had personally fired Mr. Rodriguez instead of delegating that task to Ms. Klinker, the limits on the Board's reviewing authority would not be unlawful.  Contrary to Mr. Rodriguez's argument, however, the Constitution permits principal officers to delegate duties and functions to other officers and employees, *see Touby v. United States*, 500 U.S. 160, 169 (1991), and the Secretary's delegation of removal and disciplinary authority to the head of a DVA medical center is a lawful delegation, *see* 38

U.S.C. § 512(a).[6] Thus, there is no merit to Mr. Rodriguez's contention that it is somehow improper for the Board to defer (by dint of the substantial evidence standard) to removal decisions by agency employees other than the Secretary.

Embedded within Mr. Rodriguez's one-sentence objection to the delegation of authority to Director Klinker is the suggestion that by making the Board's review of the DVA's adverse actions subject to the substantial evidence standard, instead of the preponderance-of-the-evidence standard, section 714 has impermissibly limited the Board's role in removal proceedings. *See* Petitioner's Br. 31.[7] That

---

[6]   *See also* VA Directive/Handbook 5021, § I-3.5.a (Apr. 15, 2002) ("[F]ield facility directors are responsible for: . . . . (2) Delegating to supervisors appropriate authority for the direction and discipline of employees under their jurisdiction and assuring proper supervisory training."); *id.* at § I-3.6.b(5)(b) ("The official who may issue a letter of decision must be at a higher level than the proposing official, and at or above the director level in a field facility . . . . The Secretary or designee retains the authority to make the final decision on adverse actions involving employees occupying positions centralized to the Secretary.").

[7]   As part of his contention that the Board's use of substantial evidence review forces the Board to "rubber stamp" decisions of the DVA's deciding official, Mr. Rodriguez separately complains that employees are "only given the constitutional right to cross-examine witnesses after the removal decision is effectively final because the Board must uphold the deciding official's conclusion even though it was made on an incomplete record." Petitioner's Br. 35. To the extent that sentence constitutes a constitutional objection to the limits on the post-termination proceeding before the Board, it is undeveloped. Indeed, that claim is not

suggestion, however, is not supported by authority or further developed as an argument in Mr. Rodriguez's brief.

An issue that is merely alluded to and not developed as an argument in a party's brief is deemed waived. *See Arunachalam v. Int'l Bus. Mach. Corp.*, 989 F.3d 988, 999 (Fed. Cir. 2021); *CardSoft v. Verifone, Inc.*, 769 F.3d 1114, 1119 (Fed. Cir. 2014); *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006). In this case, Mr. Rodriguez's passing complaints about the substantial evidence standard of review in section 714 are insufficiently developed as a constitutional claim and are unsupported by the citation to any authority. That claim is therefore waived.

In any event, there are problems with the challenge to the Board's use of the substantial evidence standard to which Mr. Rodriguez has not provided answers. Although Mr. Rodriguez suggests that there was a flaw in the proceedings before the Board, the post-termination hearing held before the administrative judge was a full adversarial hearing at which Mr. Rodriguez was given an opportunity to call and cross-examine witnesses. Mr. Rodriguez offers no explanation for why such a post-termination hearing is constitutionally invalid simply because the governing statute requires the decisionmaker to apply substantial evidence as the standard for reviewing the agency's action.

Mr. Rodriguez also does not explain why his objection to section 714's substantial evidence standard would not be equally applicable to the substantial evidence standard applied in proceedings under chapter 43 of Title 5. While the preponderance standard applies to post-termination hearings in adverse action appeals under chapter 75, *see* 5 U.S.C. § 7701(c)(1)(B), that standard does not apply to

---

even among the eleven issues listed in the "Statement of the Issues" portion of Mr. Rodriguez's brief. *See id.* at 1–3.

appeals under chapter 43, which deals with adverse actions based on unacceptable performance. Chapter 43 appeals, like appeals under section 714, are expressly made subject to substantial evidence review in proceedings before the Board, *see id.* § 7701(c)(1)(A); 38 U.S.C. § 714(d)(2)(A), (d)(3)(B). If the use of the substantial evidence standard in post-termination proceedings violates due process, then the constitutionality of chapter 43 would also be called into doubt.

In *Sayers*, we acknowledged that chapter 43 offers employees pre-termination protections, in the form of a warning and an opportunity to improve, that are not afforded under section 714. For that reason, among others, we held in *Sayers* that section 714 requires the Board to review "the entirety of the VA's removal decision—including the penalty—rather than merely confirming that the record contains substantial evidence that the alleged conduct leading to the adverse action actually occurred." 954 F.3d at 1379. We did not, however, suggest that the Board's use of the substantial evidence standard in either chapter 43 or section 714 proceedings was constitutionally suspect. To the contrary, we concluded that Board review of section 714 penalty determinations, even under a substantial evidence standard, was sufficient to put to rest the petitioner's due process concerns regarding section 714. *Sayers*, 954 F.3d at 1379;[8] *see also Brenner*, 990 F.3d at 1324–25.

---

[8]    The petitioner in *Sayers* raised a due process objection to the use of substantial evidence as the standard for reviewing DVA decisions, while also objecting to the administrative judge's ruling that the Board lacked authority to review the deciding official's penalty determination. Brief of Petitioner, *Sayers v. Dep't of Veterans Affs.*, No. 18-2195, 2019 WL 1723794, at *2 (Fed. Cir. Apr. 12, 2019). The court found that permitting review of the penalty determination put to rest the constitutional concerns raised

While it is true that different procedures are used in the periods leading up to removal decisions under chapter 43 and section 714, the critical point in the removal processes in both contexts is the agency's ultimate "decision," 5 U.S.C. § 4303(b)(1)(D), or "determin[ation]," 38 U.S.C. § 714(a)(1), that the employee's performance or conduct is unacceptable.  The Board reviews those conclusions for substantial evidence in both contexts, and we have never suggested that the post-termination procedures employed in the chapter 43 context are constitutionally suspect.  Mr. Rodriguez has not pointed to any distinction between chapter 43 and section 714 that would justify reaching the conclusion that the Board's use of the substantial evidence standard in chapter 43 proceedings is permissible, but the use of the same standard in section 714 proceedings is not.

In sum, while Mr. Rodriguez makes passing assertions questioning the constitutionality of the Board's use of the substantial evidence standard in section 714 proceedings, he does not support those assertions with any analysis or citation of authority.  Mr. Rodriguez's assertions, therefore, are not sufficiently developed, and we decline to address them on their merits.

2

Mr. Rodriguez next raises a series of challenges to his removal that are based on the Appointments Clause of Article II of the Constitution.

1. Mr. Rodriguez first argues that this case is governed by *Helman v. Department of Veterans Affairs*, 856 F.3d 920 (Fed. Cir. 2017), in which we held a prior version of 38 U.S.C. § 713 unconstitutional.  In that statute, Congress had provided that DVA Senior Executive Service

---

in that case; the court did not suggest that the use of the substantial evidence standard of review was problematic. *See Sayers*, 954 F.3d at 1379.

employees could obtain review of adverse agency actions by administrative judges, but not thereafter by either the Board or a court. We held that limiting review of such agency actions to administrative judges violated the Appointments Clause. *Helman*, 856 F.3d at 929. Congress subsequently amended section 713 to provide for review of such agency actions by the Board and by this court. *See* Department of Veterans Affairs Accountability and Whistleblower Protection Act of 2017, Pub. L. No. 115-41, 131 Stat. 862.

Unlike the version of section 713 that was struck down in *Helman*, section 714 does not restrict review by the Board or this court. The rationale of *Helman* therefore lends no support to Mr. Rodriguez's Appointments Clause claim. *See Helman*, 856 F.3d at 929 ("By contrast, § 713 prohibits any review of the administrative judge's decision, thereby vesting this authority entirely in an administrative judge. . . . This is unconstitutional under the Appointments Clause.").

Pointing to our reference in *Helman* to "the authority to render a final decision overturning another officer's decision," 856 F.3d at 929, Mr. Rodriguez argues that the authority to affirm or overturn a removal decision by the Secretary of Veterans Affairs can be granted only to officers of the United States, i.e., the members of the Merit Systems Protection Board. He argues that section 714 violates that principle by imposing a "substantial evidence" standard of review on the Board and stripping the Board of its authority to review agency penalty decisions, thereby making the deciding official's decision effectively unreviewable. The result, he contends, is that members of the Board, who are principal officers of the United States, are forced "to rubber stamp decisions by mere employees and/or inferior officers that they believe are wrongly decided." Petitioner's Br. 31.

There are four problems with that argument. First and foremost, Mr. Rodriguez's argument misapprehends the purpose underlying the Appointments Clause. That Clause is designed to prevent unappointed officials from wielding too much authority. *See United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1979 (2021) (The power exercised by officers of the United States "acquires its legitimacy and accountability to the public through a clear and effective chain of command down from the President, on whom all the people vote." (internal quotation marks omitted)); *Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius Inv., LLC*, 140 S. Ct. 1649, 1657 (2020) ("[T]he Appointments Clause helps to preserve democratic accountability."). The Clause was not intended to protect appointed officials from congressionally mandated changes to their statutory responsibilities (particularly in a case such as this one involving responsibilities that Congress conferred on the Board in the first place). Congress's decision to alter the standard of review of adverse actions by the DVA does not violate the Appointments Clause unless it results in an unappointed official, such as the administrative judge in *Helman*, exercising powers that may be exercised only by officers of the United States.

In this case, there was no unappointed official exercising such powers. While Ms. Klinker was not appointed by the President and thus is not a principal officer, she exercises authority to discipline DVA employees, such as Mr. Rodriguez, pursuant to her delegation from the Secretary of Veterans Affairs, as noted above. *See U.S. Telecom Ass'n v. FCC*, 359 F.3d 554, 565 (D.C. Cir. 2004) ("When a statute delegates authority to a federal officer or agency, subdelegation to a subordinate federal officer or agency is presumptively permissible absent affirmative evidence of a contrary congressional intent.").

Deciding officials such as Ms. Klinker routinely exercise delegated authority to make disciplinary decisions in individual cases, regardless of their status as officers or

employees, without being found to have acted in violation of the Appointments Clause. *See, e.g.*, *Hardy v. Merit Sys. Prot. Bd.*, 13 F.3d 1571 (Fed. Cir. 1994); *Hubbard v. United States*, 225 Ct. Cl. 542, 543 (1980); *Monahan v. United States*, 354 F.2d 306 (Ct. Cl. 1966). The authority to issue instructions to subordinates and to discipline subordinates for failing to follow those instructions is inherent in the role of any supervisor. Mr. Rodriguez cites no authority and makes no argument as to why the imposition of disciplinary sanctions against individual employees constitutes the exercise of authority that may be wielded only by a principal or inferior officer of the United States, and we decline to so hold.

Second, Mr. Rodriguez overstates the extent to which section 714 reduces the Board's authority in reviewing disciplinary actions. As we initially stated in *Sayers* and reiterate today, while section 714 withdraws from the Board the authority to mitigate penalties by substituting penalties for those chosen by the agency, it does not prevent the Board from reviewing penalty decisions and requiring the agency to reconsider penalty decisions in appropriate cases.

Third, the limitations on the scope of review exercised by the Board do not leave deciding officials with unchecked authority to make disciplinary decisions. As noted above, the substantial evidence test has long been applied by the Board when reviewing decisions of agency deciding officials under chapter 43 of Title 5. Yet that standard of review has never been considered to create an Appointments Clause issue in those cases.

Fourth, Mr. Rodriguez has made no showing in this case as to whether Ms. Klinker, the deciding official, was appointed by the Secretary of Veterans Affairs or instead by some subordinate official. If she was appointed by the Secretary, her appointment would qualify her to serve as an inferior officer under the Appointments Clause. By

statute, the director of a DVA medical center is appointed by the Secretary of Veterans Affairs, 38 U.S.C. § 7401(4). That is relevant because Mr. Rodriguez does not argue that disciplinary actions can be imposed only by principal officers of the United States, and he does not argue that Ms. Klinker fails to qualify as an inferior officer.

There is therefore no record before us on which we could find an Appointments Clause violation in this case even if we were to assume that disciplinary authority may be exercised only by principal or inferior officers of the United States.

2. Citing *Lucia v. SEC*, 138 S. Ct. 2044 (2018), Mr. Rodriguez makes a passing reference to the question whether the Board's administrative judges have been properly appointed for purposes of the Appointments Clause. Before the administrative judge, Mr. Rodriguez alluded to that question, but he did not argue that the administrative judge should take any action based on that claim. *See* J.A. 1601 n.4. And even in this court, Mr. Rodriguez merely states that "if [the court] finds the Administrative Judge was not properly appointed," "it must remand the case." Petitioner's Br. 32.

But Mr. Rodriguez has not made a record that enables us to determine whether the authority exercised by the Board's administrative judges violates the Appointments Clause. In particular, Mr. Rodriguez failed to offer evidence as to how the Board's administrative judges generally, and the administrative judge in this case in particular, were appointed.[9] Moreover, Mr. Rodriguez has

---

9    Beyond that, Mr. Rodriguez has not specified whether his contention is that the Board's administrative judges are principal officers of the United States, and thus required to be appointed by the President subject to confirmation by the Senate, or are inferior officers, who may be

RODRIGUEZ v. DVA

not addressed the substantial degree of supervision and control exercised by the Board over the assignments and decisions of the Board's administrative judges,[10] a factor the Supreme Court has regarded as important in determining whether particular responsibilities can be performed only by principal officers or inferior officers of the United States. *See Arthrex*, 141 S. Ct. at 1981–84; *Edmond v. United States*, 520 U.S. 651 (1997); *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868 (1991). We therefore do not address whether, in light of the adjudicative responsibilities of the Board's administrative judges, the manner in which they were appointed fails to satisfy the Appointments Clause.[11]

---

appointed by the head of a department. In a footnote in the *Helman* case, we alluded to the Board's process for hiring administrative judges at that time, but we reserved judgment as to whether the administrative judges were "employees" for purposes of the Appointments Clause. 856 F.3d at 928 n.3. Even if the Board's administrative judges are considered officers, rather than employees, the question whether they are principal officers, as opposed to inferior officers, is of critical importance in light of the difference in the method of appointing such officers, and thus the difference in the ease of correcting any constitutional flaw in their appointments.

[10] *See, e.g.*, 5 U.S.C. § 7701(a), (b)(1), (e); 5 C.F.R. §§ 1201.114–118.

[11] The question whether the Board's administrative judges are properly considered principal officers or inferior officers of the United States and whether they were properly appointed for purposes of the Appointments Clause is currently pending before another panel of this court in *McIntosh v. Department of Defense*, No. 19-2454 (Fed. Cir. filed Sep. 26, 2019). The *McIntosh* case was stayed pending the Supreme Court's decision in *Arthrex,*

RODRIGUEZ v. DVA                                                    31

3. Mr. Rodriguez notes that the Board lacks a quorum at present. As a result, he contends, the Board's administrative judges exercise unconstitutional authority because of the absence of any possibility of review of their decisions by the Board. The absence of a quorum, however, is a temporary circumstance, not a structural defect resulting from statutory limitations on Board review of administrative judges' initial decisions.

By statute, a federal employee receiving an adverse decision from an administrative judge has the choice of either seeking immediate judicial review of that decision, or seeking review by the Board, followed by an opportunity for judicial review. *See* 5 U.S.C. §§ 7701(e)(1), 7703(a)(1). Those two options are still open to employees and were open to Mr. Rodriguez, who chose to seek immediate judicial review from the administrative judge's decision. To be sure, the temporary absence of a quorum means that, at present, if an employee seeks review by the Board, the review will be delayed. But the delay, while unfortunate, does not convert a constitutionally valid review process into a violation of the Appointments Clause. *See United States v. Eaton*, 169 U.S. 331, 343 (1898) (holding that a subordinate "charged with the performance of the duty of the superior for a limited time, and under special and temporary conditions" is not "thereby transformed into the superior and permanent official."). The delay caused by the absence of a quorum on the Board does not render the statutory adjudicative scheme constitutionally suspect any more than would be true in the event of a lengthy delay in the

---

141 S. Ct. 1970, which was issued on June 21, 2021. The *McIntosh* case is likely to be decided before the completion of the remand proceedings in this case.

resolution of Board appeals caused by a severe backlog in cases pending before the Board.[12]

We reverse the decision of the Merit Systems Protection Board upholding Mr. Rodriguez's removal, and we remand this case to the Board for further proceedings consistent with this opinion.

## REVERSED AND REMANDED

COSTS

No costs.

---

[12] If the absence of a quorum were to continue for a significant additional period with no prospect that new Board members would be appointed, the absence of a quorum might give rise to an Appointments Clause issue. However, two nominees for the three-person Board (a quorum) have now been named, and there is therefore a reasonable prospect that the absence of the availability of prompt Board review will soon be resolved—perhaps before this case is readjudicated on remand.