NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MICHAEL E. SHEIMAN,**
*Petitioner*

**v.**

**DEPARTMENT OF THE TREASURY,**
*Respondent*

---

2022-2045

---

Petition for review of the Merit Systems Protection Board in No. SF-0752-15-0372-I-2.

---

Decided: April 3, 2024

---

GEORGE CHUZI, Kalijarvi, Chuzi, Newman & Fitch, PC, Washington, DC, argued for petitioner. Also represented by AARON H. SZOT.

STEPHANIE FLEMING, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by REGINALD THOMAS BLADES, JR., BRIAN M. BOYNTON, PATRICIA M. MCCARTHY.

---

Before PROST, SCHALL, and REYNA, *Circuit Judges.*

SCHALL, *Circuit Judge.*

## DECISION

Michael E. Sheiman petitions for review of the May 24, 2022 Final Order of the Merit Systems Protection Board ("Board") that sustained the action of the Internal Revenue Service ("IRS" or "agency") that removed Mr. Sheiman from his position as a GS-13 Senior Appraiser in Honolulu, Hawaii. *Sheiman v. Dep't of the Treasury*, No. SF-0752-15-0372-I-2, 2022 WL 1667885 (M.S.P.B. May 24, 2022); J.A. 1–23.[1]    We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).  For the reasons stated below, we *affirm*.

## DISCUSSION

### I

The events resulting in Mr. Sheiman's removal began when the agency received an anonymous letter dated September 16, 2011.  The writer alleged that Mr. Sheiman was abusing his work time by, among other things, "golfing in the early afternoons during the work week."  J.A. 2 (citation omitted).  From September 26, 2011, to February 18, 2014, the Treasury Inspector General for Tax Administration ("TIGTA") conducted an investigation regarding the allegations in the letter.  *Id.*

Based upon the TIGTA investigation, the agency issued an October 24, 2014 notice proposing to remove Mr. Sheiman from his position.  The notice was based on two charges.  The first charge was providing false information regarding official time and attendance records.  The second charge was providing misleading information regarding official time and attendance records.  Charge 1

---

[1]    We refer to the Board's Final Order as its "final decision."

contained 168 specifications, each specifying a date when the agency alleged Mr. Sheiman played golf during his duty hours, during the time period August 4, 2006, through August 9, 2013. J.A. 26. Charge 2 contained 29 specifications, each specifying a date during the time period May 23, 2007, through July 18, 2013. On these dates, the agency charged, Mr. Sheiman played golf when he had requested, and had taken, sick leave. *Id.*

On February 3, 2015, Stephen C. Whiteaker, the agency's deciding official for the proposed removal, issued a notice sustaining all of the specifications in both Charge 1 and Charge 2. In addition, Mr. Whiteaker found that removal was the appropriate penalty for each of the charges. J.A. 133–34. Mr. Sheiman was removed from the agency effective February 6, 2015. Thereafter, he timely appealed to the Board.

II

The administrative judge ("AJ") to whom Mr. Sheiman's appeal was assigned conducted a hearing on October 1–2, 2015. Subsequently, on August 1, 2016, the AJ issued an initial decision. *Sheiman v. Dep't of the Treasury*, No. SF-0752-15-0372-I-2, 2016 WL 4161767 (M.S.P.B. Aug. 1, 2016); J.A. 24–55. In her initial decision, the AJ ruled (1) that Charge 1 was not sustained; (2) that eight of the 29 specifications of providing misleading information in Charge 2 were sustained; and (3) that Mr. Sheiman's removal should be mitigated to a 30-day suspension. J.A. 36–37, 40–42, 48.

Regarding Charge 1, the AJ stated:

Based on the totality of the circumstances, considering the appellant's plausible explanation of his misunderstanding [regarding time and attendance reporting], the other record evidence corroborating his understanding, and the lack of circumstantial evidence from which an intent to defraud could be

> inferred, I find the agency did not show he intended
> to defraud or deceive the government when he com-
> pleted his time and attendance records.

*Id.* at 36.

Considering Charge 2, the AJ found, with respect to each of the eight specifications she sustained, that Mr. Sheiman took sick leave on days when he was not seeking medical treatment and was not medically incapacitated. She also found that, in doing so, he "knowingly provided inaccurate information on his time and attendance records." *Id.* at 42. The AJ stated that Mr. Sheiman "knew or should have known that paid sick leave was for illness or medical treatment, not for engaging in a recreational activity or sport such as golfing" and that, "as a federal employee, he knew or should have known that he needed to take annual leave for recreational activities or a sport such as playing golf." *Id.* at 41–42.

As noted, though, the AJ mitigated the agency's penalty of removal to a 30-day suspension. She did so because she determined that the penalty of removal was not within the parameters of reasonableness. *Id.* at 46. The AJ began by stating that she agreed with Mr. Whiteaker that Mr. Sheiman had committed a serious offense when he took sick leave and played golf, especially given the nature of his position, which involved a great deal of trust due to the lack of on-site supervision. *Id.* at 47. "However," she continued, "there are strong mitigating factors here, including the appellant's potential for rehabilitation." *Id.* In addition, the AJ noted that Mr. Sheiman "was remorseful and acknowledged that he made mistakes in his time and attendance practices." *Id.* The AJ also noted that, immediately following his interview with the TIGTA investigator in February 2014, Mr. Sheiman contacted his supervisor for instructions regarding how to accrue, use, and properly record his hours and that he complied with all time and attendance requirements from that time until his

removal.  Further, the AJ observed that most of the instances of Mr. Sheiman requesting sick leave to golf occurred about four years before his removal.  *Id.*  And finally, the AJ noted that Mr. Sheiman had faced no other disciplinary actions during his nine years of federal service.  *Id.*  Taking these several factors into account, the AJ concluded:

> I find that the penalty of removal exceeds the tolerable limits of reasonableness.  Based on the mitigating factors[,] including [the appellant's] potential for rehabilitation, 9 years of service with the agency, record of good performance, and lack of prior discipline, I find that the agency's penalty is outside the bounds of reasonableness.  I find that a 30-day suspension without pay is the maximum reasonable penalty under the circumstances of this case.

*Id.* at 48 (footnote omitted).

### III

The agency and Mr. Sheiman, respectively, petitioned and cross-petitioned for review.  In its petition, the agency advanced two grounds.  First, it contended that, contrary to the AJ's finding, it proved Charge 1.  J.A. 5.  Second, it argued that, after she sustained eight specifications of Charge 2, the AJ erred in mitigating Mr. Sheiman's removal to a 30-day suspension.  *Id.* at 6.  Relevant here, in his cross-petition for review, Mr. Sheiman argued that the AJ erred in sustaining Charge 2.  *Id.*  He also argued that the AJ erred in finding that he knew his use of sick leave to play golf was improper and that he knowingly provided

inaccurate information on his time and attendance records. *Id.*[2]

In its final decision, the Board affirmed-in-part the AJ's initial decision.  First, rejecting the agency's arguments to the contrary, the Board concluded that the agency had failed to prove Charge 1, the falsification charge, because it had failed to show that Mr. Sheiman had acted with the requisite intent.  *Id.*  Specifically, the Board "agree[d] with the [AJ] that the agency failed to prove that [Mr. Sheiman] intended to deceive or defraud the Government when he completed his time and attendance records." *Id.* at 7.  Viewing the record, the Board found "no sufficiently sound reasons to disturb the [AJ]'s demeanor-based conclusion that [Mr. Sheiman] did not intend to defraud or deceive the Government when he completed his time and attendance records." *Id.*  The Board also adopted the AJ's decision to sustain eight of the 29 specifications of providing misleading information under Charge 2.  *Id.* at 10.  Continuing, however, the Board determined that the AJ had erred in mitigating Mr. Sheiman's penalty from removal to a 30-day suspension.  It therefore reinstated the removal.  *Id.* at 11.

In reinstating the agency's penalty, the Board found that the AJ had erred in revisiting the penalty assessment when the deciding official had determined that removal was appropriate for each charge independently.  *Id.* at 12. Most importantly, the Board also found that the AJ had erred in her consideration of the pertinent *Douglas* factors.[3]  In that regard, the Board began by stating that it

---

[2]    Mr. Sheiman also cross-petitioned for review of a ruling by the AJ with respect to a debt collection dispute between himself and the agency.  J.A. 17.  That matter is not before us.

[3]    In *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305–06 (1981), the Board listed twelve factors that it

disagreed with the AJ's assessment of Mr. Sheiman's potential for rehabilitation (*Douglas* factor 10). The Board noted that the AJ had found that Mr. Sheiman was remorseful, that he had acknowledged that he made mistakes in his time and attendance practices, and that he had complied with all time and attendance requirements after his first interview with the TIGTA investigator. *Id.* And, the Board stated, "[w]e discern no basis to disturb the [AJ's] credibility determination that the appellant expressed sincere remorse for some of his conduct." *Id.* at 13. Nevertheless, the Board found that the AJ had failed to consider all of the relevant evidence in concluding that Mr. Sheiman could be rehabilitated and that therefore this finding was not entitled to deference. *Id.*

First, regarding remorse, the Board pointed out that the AJ did not consider that Mr. Sheiman only admitted to his "timekeeping errors" after being confronted about them during the TIGTA investigation. The Board stated that this warranted a reduction in the weight accorded this factor. *Id.* (citing *Saiz v. Dep't of the Navy*, 122 M.S.P.R. 521, ¶ 13 (2015) (concluding that an appellant's expressions of remorse should be given reduced weight because he made them only after his misconduct was discovered) and *Singletary v. Dep't of the Air Force*, 94 M.S.P.R. 553, ¶ 15 (2003) (explaining that the timing of expressions of remorse is relevant in assessing rehabilitation potential), *aff'd*, 104 F. App'x 155 (Fed. Cir. 2004)). Second, the Board noted that Mr. Sheiman's admissions only concerned the unproven misconduct set forth in Charge 1, the falsification charge. *Id.* Turning to Charge 2, the Board noted that

---

deemed relevant for consideration in determining the appropriateness of a penalty. We have endorsed the use of the Douglas factors in penalty determinations. *See Rodriguez v. Dep't of Veterans Affs.*, 8 F.4th 1290, 1302–03 (Fed. Cir. 2021) (collecting cases).

Mr. Sheiman had "never owned up to his misuse of sick leave or expressed any remorse for his lack of candor in the matter." *Id.* While the Board acknowledged some mitigating factors, such as Mr. Sheiman's nine years of service and his consistently above-average performance (*Douglas* factors 3 and 4), it concluded that removal was within the tolerable limits of reasonableness for what it viewed as Mr. Sheiman's "sustained misconduct." *Id.* at 14. In arriving at this conclusion, the Board observed that, by knowingly providing inaccurate information on his time and attendance records, Mr. Sheiman had demonstrated a lack of candor, a serious offense striking at the heart of the employer-employee relationship. This was particularly so, the Board pointed out, considering the nature of Mr. Sheiman's position, in which Mr. Sheiman often worked remotely and was in a position of public trust that required him to have contact with the public. *Id.* The Board noted that these considerations led the deciding official to lose trust in Mr. Sheiman, which the Board viewed as an aggravating factor. *Id.* at 15.

Finally, the Board stated that, to the extent the AJ found mitigation appropriate because lesser penalties were available, it disagreed with her. The Board noted that removal was within the range of penalties in the IRS's Guide to Penalty Determinations and that the Guide states that "[p]ersons in positions of trust, or who deal directly with taxpayers, can be held to higher standards." *Id.*; J.A. 109. In conclusion, the Board stated:

> Having carefully considered the evidence and weighed the pertinent *Douglas* factors as a whole, we discern no basis to disturb the determination of the deciding official that removal is a reasonable penalty for the sustained charges and specifications. Although the appellant has 9 years of good performance and demonstrated remorse, we find that these factors are outweighed by the nature and seriousness of his offense as it relates to his

position, duties, and responsibilities, particularly considering his employment by the IRS and the level of trust that is required for a Senior Appraiser.

J.A. 16–17.

## IV

We must set aside a Board decision if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). "The petitioner bears the burden of establishing error in the Board's decision." *Harris v. Dep't of Veterans Affs.*, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

## V

### A

Mr. Sheiman makes two arguments on appeal. First, citing *Purifoy v. Department of Veterans Affairs*, 838 F.3d 1367 (Fed. Cir. 2016), he claims that when the Board reinstated the penalty of removal, it erred because it failed to defer to the AJ's demeanor-based credibility findings. Pet'r's Br. 19–24, 27–28; Pet'r's Reply Br. 8–14. *Purifoy* stands for the proposition that when an AJ's findings about an appellant's propensity for rehabilitation "are necessarily intertwined with issues of credibility and an analysis of his demeanor at trial," they deserve deference from the Board. 838 F.3d at 1373. The problem with Mr. Sheiman's argument is that his case does not present a *Purifoy* situation. In Part III above, we have described the Board's final decision at length. From that description, it is clear that the Board did not fail to defer to the AJ's credibility determinations. On the contrary, as seen, the Board accepted those determinations. However, after deferring to the AJ's credibility determinations, the Board went on to hold that the AJ had erred in her weighing of the *Douglas* factors

relating to Mr. Sheiman's potential for rehabilitation. In *Haebe v. Department of Justice*, 288 F.3d 1288, 1302 (Fed. Cir. 2002), we said that "[w]hen the demeanor-based deference requirement is not in play, the MSPB is free to re-weigh the evidence and substitute its own decision as to the facts or the law commensurate with the substantial evidence standard." Here the Board accepted the AJ's demeanor-based credibility determinations. Then, however, it substituted its own decision for that of the AJ on the issue of mitigation of the penalty. In short, the Board did what in *Haebe* we said it could do. It thus committed no error. We therefore reject Mr. Sheiman's first argument.

B

Mr. Sheiman's second argument is that the Board erred in finding that the IRS Penalty Guide provided for removal for a first offense of providing misleading information regarding official time and attendance records, as alleged in Charge 2. Pet'r's Br. 21. He thus claims that the Board's decision reinstating his removal was arbitrary, capricious, and/or an abuse of discretion and constituted clear error. *Id.* at 35–36. In making this argument, Mr. Sheiman points out that, in its final decision, the Board apparently relied on the 2007 version of the Guide. The 2007 version of the Guide, Mr. Sheiman notes, did provide for a "written reprimand to removal" for a first offense of "false statements, misrepresentation, or fraud in entitlement, including providing false information concerning time, leave, travel, or other entitlements." J.A. 119 (capitalization altered). He further notes, however, that the 2012 version of the Penalty Guide, which was in effect when he was removed, provided for a punishment of "written reprimand" to a "20-day suspension" for a first offense involving the same acts. J.A. 87 (capitalization altered). Mr. Sheiman thus urges that the maximum penalty that should have been imposed upon him with respect to Charge 2 was a 20-day suspension.

We do not agree. While Mr. Sheiman correctly points out the difference between the 2007 and the 2012 Guides, the Board's confusion in this regard was at most harmless error. *See Sistek v. Dep't of Veterans Affs.*, 955 F.3d 948, 957 (Fed. Cir. 2020); *Haebe*, 288 F.3d at 1309; *Kewley v. Dep't of Health and Human Servs.*, 153 F.3d 1357, 1366 (Fed. Cir. 1998). First of all, the 2012 version of the Penalty Guide states, in bold letters: "The range of penalties should serve as a guide ONLY, not a rigid standard. Deviations from the guide are permissible and greater or lesser penalties than suggested may be imposed." J.A. 77. Similar language appeared in the 2007 version of the Guide. J.A. 107. Moreover, both the 2012 and the 2007 version of the Penalty Guide state that "[p]ersons in positions of trust, or who deal directly with taxpayers, can be held to higher standards." J.A. 102, 109. As noted above in Part III, the Board pointed out that Mr. Sheiman was in a position of trust and dealt with the public, and the deciding official testified that he lost confidence in Mr. Sheiman. We decline to disturb the reinstatement of Mr. Sheiman's removal on account of the Board's apparent reliance on the language in the 2007 version of the Penalty Guide.

We have considered Mr. Sheiman's remaining arguments and have found them not persuasive.

## CONCLUSION

For the foregoing reasons, we affirm the final decision of the Board.

### **AFFIRMED**

## COSTS

No costs.