NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JASON ANTOINE BROCK,**
*Petitioner*

**v.**

**DEPARTMENT OF TRANSPORTATION,**
*Respondent*

---

2023-1133

---

Petition for review of the Merit Systems Protection Board in No. AT-0752-20-0542-M-1.

---

Decided: September 19, 2023

---

FLORENCE M. JOHNSON, Johnson and Johnson, PC, Memphis, TN, for petitioner.

DANIEL BERTONI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY.

---

Before DYK, HUGHES, and STOLL, *Circuit Judges.*

PER CURIAM.

Mr. Jason Brock worked for the Department of Transportation, Federal Aviation Administration (FAA) as an Airway Transportation Systems Specialist (ATSS) at the Nashville System Support Center before the FAA removed him for insubordination. Mr. Brock appealed to the Merit Systems Protection Board, disputing the charge of insubordination, alleging that the FAA's removal was retaliatory, and alleging harmful procedural error. The Board affirmed the FAA's decision. For the reasons below, we affirm.

## BACKGROUND

Mr. Brock began his federal service in 2006 and most recently held the position of ATSS. As an ATSS, Mr. Brock was expected to maintain FAA buildings, roads, and grounds. Mr. Brock's disciplinary history includes a 12-day suspension for misusing a government credit card; a 5-day suspension for failing to follow instructions (specifically, failing to complete driver's training); and a 30-day[1] suspension for negligent work performance and giving inaccurate information in a government record. On April 10, 2020, the FAA issued a proposed removal letter to Mr. Brock, providing two specifications to support a charge of insubordination. *Brock v. Dep't of Transp.*, 2022 MSPB LEXIS 3305, at \*2 (M.S.P.B. Aug. 31, 2022) (*Decision*).

In the first specification, the agency alleged that Mr. Wesley Ivory—Mr. Brock's first-level supervisor—had instructed Mr. Brock to purchase lights and to replace emergency lighting. Mr. Brock objected because he believed this task was outside the scope of his duties, but offered to "carry out [the] request on overtime." J.A. 382.

---

[1] Management officials later reduced this suspension to fourteen days. J.A. 152.

Mr. Brock did not purchase the emergency lighting or replace the emergency lighting.

For the second specification, the agency alleged that Mr. Ivory instructed Mr. Brock to troubleshoot the lighting system on a landing runway and update the control center accordingly. J.A. 386. Mr. Brock responded that because he had not passed the theory requirement for the lighting system, he would not troubleshoot the lighting system. J.A. 387. Mr. Ivory explained that troubleshooting the lighting system was within the scope of Mr. Brock's duties in accordance with FAA Order 6000.15 and again directed Mr. Brock to troubleshoot the lighting system. *Decision* at *9–10; J.A. 389–90. Mr. Brock did not comply with this instruction. Based on these two specifications, Mr. Eric Alexander, the deciding official, determined that removal was the appropriate penalty. After considering Mr. Brock's response, Mr. Alexander sustained Mr. Brock's removal, effective May 20, 2020.

Mr. Brock appealed to the Board, disputing the charge of insubordination, also arguing that the FAA retaliated against him for his protected whistleblowing disclosures and that the FAA had committed harmful procedural error.[2]

The Board sustained the insubordination charge. Regarding Mr. Brock's whistleblower defense, the Board explained the burden-shifting framework for whistleblower cases:

> To prove a prima facie case of retaliation for whistleblowing or other protected activity, the

---

[2] Mr. Brock also claimed the FAA had removed him based on his race, religion, gender, age, and previous Title VII activity. *Decision* at *24. The Board rejected this defense. *Id.* at *24–28. Mr. Brock does not challenge the Board's determination in this regard.

appellant must prove by preponderant evidence that: (a) he engaged in activity protected by 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (B), (C), or (D); and (b) it was a contributing factor in the personnel action being appealed. If the appellant meets this burden, the agency must prove by clear and convincing evidence that it would have taken the same action even absent the disclosure or other protected activity. In determining whether the agency has proven by clear and convincing evidence that it would have taken the same action against the appellant in the absence of this protected activity, the Board and its reviewing court have stated that they will consider all of the relevant factors, including: 1) the strength of the agency's evidence in support of its action; 2) the existence and strength of any motive to retaliate on the part of agency officials involved in the decision; and 3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.

*Decision* at \*13–14 (citations omitted).

The Board then found that the first of the six alleged protected disclosures was indeed protected. By email dated February 7, 2020, Mr. Brock disclosed to management that a coworker had told a contractor to "shut up." J.A. 83. For this single protected disclosure, the Board determined that Mr. Brock had proved that it was a factor contributing to the agency's decision to remove him because it occurred close in time to Mr. Alexander's decision to remove Mr. Brock. In determining whether the FAA had proved by clear and convincing evidence that it would have removed Mr. Brock in the absence of his disclosure, the Board considered the seriousness of the insubordination in light of the FAA's ability to carry out its objectives; Mr. Brock's disciplinary history; the potential for retaliatory motive; and the FAA's actions against "employees with

a prior disciplinary history who were not whistleblowers." *Decision* at *16–17. The Board concluded that the FAA proved by clear and convincing evidence that it would have removed Mr. Brock in the absence of his protected disclosure. For each of the remaining five allegedly protected disclosures, the Board determined either that it was not protected or that Mr. Brock had not shown that it was a contributing factor to his removal.

The Board also considered Mr. Brock's defense that the FAA committed harmful procedural error by "misappl[ying] Executive Order 13839 in effectuating his removal," "assign[ing] him the tasks which were the subject of its insubordination charges," and "violat[ing] its procedures by charging him with insubordination instead of failure to follow instructions." *Decision* at *22–24. The Board explained that there was no evidence that the agency relied on Executive Order 13,839, that Mr. Brock failed to specify which agency procedures were allegedly violated by assigning him the particular tasks, and that no agency procedure prohibited the insubordination charge in favor of failure to follow instructions. The Board thus did not find this defense persuasive.

Turning to whether the agency's removal decision "promotes the efficiency of the service," the Board found that there was a nexus between the removal and promoting the efficiency of the FAA's service. The Board found the nexus "self-evident" because the insubordination "took place at work." *Id.* at *28.

Finally, the Board analyzed the reasonableness of removal in light of the relevant factors set forth in *Douglas v. Veterans Administration*, 5 M.S.P.B. 313 (1981). *Id.* at *28–30 (citing *Douglas*, 5 M.S.P.B. at 331–33). The Board considered and credited Mr. Alexander's testimony that Mr. Brock's insubordination was "serious, intentional, and repeated" and hindered the FAA's operation; that other insubordinate employees had been removed and

removal was in the agency's table of penalties; that Mr. Brock's repeated misconduct and lack of remorse showed his inability to be rehabilitated; and that Mr. Alexander had not considered suspension—rather than removal—due to past discipline. *Id.* at \*29. The Board also noted that Mr. Alexander believed Mr. Brock's fourteen years of service was a mitigating factor, but this was outweighed by the other *Douglas* factors. The Board accordingly affirmed the FAA's action.

Mr. Brock timely appeals under 5 U.S.C. § 7703. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

DISCUSSION

We review the Board's legal conclusions de novo and its fact findings for substantial evidence. *See Smith v. Gen. Servs. Admin.*, 930 F.3d 1359, 1364 (Fed. Cir. 2019). "To determine whether substantial evidence supports the Board, we must determine whether 'considering the record as a whole, the agency's evidence is sufficient to be found by a reasonable factfinder to meet the [agency's] evidentiary burden.'" *Id.* at 1367 (quoting *Leatherbury v. Dep't of the Army*, 524 F.3d 1293, 1300 (Fed. Cir. 2008)). The Board's decision must be affirmed unless it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; "obtained without procedures required by law, rule, or regulation having been followed"; "or unsupported by substantial evidence." 5 U.S.C. § 7703(c).

On appeal, Mr. Brock argues that the Board erred by: (1) sustaining the two specifications of the agency's insubordination charge; (2) concluding he failed to prove his affirmative defense of retaliation; (3) concluding that he failed to prove his affirmative defense of harmful procedural error; (4) finding a nexus between the insubordination charge and Mr. Brock's ability to accomplish his duties; and (5) determining that removal was a reasonable penalty. We address each argument in turn.

I

We first address Mr. Brock's argument that the Board erred in sustaining the FAA's charge of insubordination. We review the Board's decision to sustain such charges for substantial evidence. *See Bieber v. Dep't of Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002). Insubordination is "a willful and intentional refusal to obey an authorized order of a superior officer which the officer is entitled to have obeyed." *Phillips v. Gen. Servs. Admin.*, 878 F.2d 370, 373 (Fed. Cir. 1989) (emphasis omitted). The "obey now, grieve later" rule states that "government employees may not refuse to do work merely because of disagreements with management and failure to perform their duties is done at the risk of being insubordinate." *Bigelow v. Dep't of Health & Hum. Servs.*, 750 F.2d 962, 965 (Fed. Cir. 1984) (cleaned up); *see Larson v. Dep't of Army*, 260 F.3d 1350, 1354 n.3 (Fed. Cir. 2001). The two recognized exceptions to this rule are when: (1) an order places an employee in a dangerous situation; and (2) when an order to make a disclosure would cause irreparable harm. In addition, personnel action may not be taken against an employee for "refusing to obey an order that would require the individual to violate a law, rule, or regulation." 5 U.S.C. § 2302(b)(9)(D).

The FAA supported its charge of insubordination with two specifications. We address the Board's analysis of each specification in turn.

A

The first specification alleges that on February 19, 2020, Mr. Ivory verbally instructed Mr. Brock to purchase LED emergency lights and replace emergency lighting at the air traffic control tower. The next day, Mr. Ivory emailed this instruction to Mr. Brock with a deadline of February 27, 2020, along with the advisement that "failure or delay in completing this assignment could result in disciplinary action." *Decision* at *4. Mr. Brock did not purchase or install the lights.

As the Board correctly noted, because there was no dispute that Mr. Brock's supervisor gave him an instruction which he intentionally failed to obey, "the only question is whether the agency order was proper." *Id.* at \*6. In considering the propriety of the order, the Board relied on Mr. Ivory's testimony that: following an Occupational Safety and Health Administration inspection that found some emergency lights out of service, he decided to upgrade the lights and fixtures; he instructed Mr. Brock with the assistance of a colleague to purchase and install these lights; Mr. Brock responded that such tasks were not within his job scope; Mr. Brock offered to perform these tasks if he was paid overtime; operational risk management (ORM) was only necessary where harm was likely to result from the task; and ORM was unnecessary because the instruction would merely require turning off the power and replacing the lights, "a procedure which all environmental specialists knew to safely execute." *Id.* at \*6–8. The Board considered Mr. Brock's explanations as to why he was entitled to disobey—the task was outside the scope of his duties; he was too busy; he had no assistance; and there was no ORM for the task—found that based on Mr. Ivory's testimony, the task was not dangerous and thus did not fall within that exception to the "obey now, grieve later" rule.

On appeal, Mr. Brock argues that the Board "improperly discounted" his testimony and should have discounted Mr. Ivory's testimony. Appellant Br. 11, 13–14. Mr. Brock further argues he should be protected under the Follow the Rules Act of 2017 because following Mr. Ivory's order would have required him to violate a law, rule, or regulation. Appellant Br. 9. We disagree. The Board was entitled to weigh the evidence in reaching its fact findings, which we review for substantial evidence. Here, the Board considered both Mr. Brock's and Mr. Ivory's testimony and, based on that testimony, found that the task assigned was not dangerous. The Board emphasized Mr. Brock's testimony

that he did not perform the task because it was outside the scope of his duties.  After reviewing the record, we conclude that substantial evidence supports the Board's finding that the task was not dangerous, and that Mr. Brock has failed to show that performing the task would have required him to violate a law, rule, or regulation.  Accordingly, we affirm the Board's finding that Mr. Brock's intentional refusal to perform this task was insubordinate.

B

The second specification alleges that on March 12, 2020, Mr. Ivory directed Mr. Brock to "troubleshoot and report an update to Atlantic Operations Control Center (AOCC) on the UQU Approach Lighting System (ALS) Remote Monitoring and Logging System (RMLS) no later than 14:00 CST," but Mr. Brock "did not comply with the directive." *Decision* at *8–9.

In finding that the FAA had proven that Mr. Brock failed to carry out an instruction, the Board relied on Mr. Ivory's testimony that: an ALS on a runway helps pilots find the runway on approach for landing; "UQU" identifies the runway on which these ALS lights are located; Mr. Ivory assigned Mr. Brock the task of troubleshooting the ALS at UQU monitoring and logging system to find the cause of the malfunction, which he believed was due to "a blown light bulb or a loose battery"; Mr. Brock refused because he was not certified to work on the system; Mr. Ivory responded to Mr. Brock that Mr. Brock was certified and therefore should perform the instruction.  *Id.* at *9–10.  Again, the Board found, based on Mr. Brock's "statements . . . expressly refusing to obey his supervisor's instruction," that Mr. Brock's failure to obey was "intentional."  *Id.* at *10.

In assessing whether the instruction was improper— i.e., would have placed Mr. Brock in danger or would have required Mr. Brock to violate a law, rule, or regulation— the Board considered Mr. Brock's contention that he lacked

certification on the "Airflow" system; evidence that the ALS system was a "Godfrey" system with Airflow components, that Mr. Brock was certified to work on Godfrey systems, and that Mr. Brock had previously worked on Airflow systems; and Mr. Alexander's testimony that Mr. Brock could safely troubleshoot the system without certification, that the Godfrey system at issue having an Airflow component does not require Airflow certification, and that Mr. Brock "had previously worked on this very system in May of 2019." *Id.* at \*11–12. The Board also considered the FAA rule pertaining to maintenance duties:

> Maintenance personnel without active certification authority may perform maintenance and logging duties. If these duties affect a certification parameter, an ATSS with active certification authority must follow up with the appropriate certification.

*Id.* at \*12 (quoting FAA Order 6000.15H § 5-5(d)). The Board ultimately found that "no evidence" showed that Mr. Brock would have been in a dangerous situation, that the "obey now, grieve later" rule applied, and that Mr. Brock's intentional refusal to perform the instruction was insubordinate. *Id.* at \*12–13; *see Larson*, 260 F.3d at 1354 n.3.

The above-described record evidence is sufficient to be found by a reasonable factfinder to demonstrate that the instruction was proper (i.e., not dangerous and did not require Mr. Brock to violate a law, rule, or regulation). *Smith*, 930 F.3d at 1367; 5 U.S.C. § 2302(b)(9)(D). As such, we conclude that substantial evidence supports the Board's finding that, for the second specification, the agency proved that Mr. Brock's failure to follow instructions to troubleshoot the ALS and report an update was insubordination.

\*   \*   \*

Substantial evidence therefore supports the Board's decision to sustain the FAA's charge of insubordination.

## II

We now address Mr. Brock's arguments regarding his affirmative defense of retaliation. Before the Board, Mr. Brock alleged he had made six protected disclosures to the FAA. On appeal, he challenges the Board's determinations regarding three of these disclosures. First, on February 7, 2020, Mr. Brock reported to management about a colleague, Mr. Phillips, telling a contractor to "shut up" in violation of agency policy to treat others with decorum (discourtesy disclosure). *Decision* at *15. In another disclosure, Mr. Brock alleges he disclosed the requirement of an ORM concerning the instruction in the first specification of the insubordination charge (ORM disclosure). Finally, Mr. Brock emailed Mr. Ivory on February 24, 2020, alleging that Mr. Phillips was "sabotaging" his work and gear (sabotage disclosure). *Id.* at *21.

On appeal, Mr. Brock specifically argues that (1) the Board erred when it "inexplicably" determined that the agency would have removed Mr. Brock even absent the discourtesy disclosure; (2) Mr. Brock should be "given the benefit of a ruling in his favor" as to the ORM disclosure because all but one of the lights were operational; and (3) as to the sabotage disclosure, the Board should have reviewed the entire timeline for context as to the alleged sabotage.[3] Appellant Br. 14–17. We find these arguments unavailing.

---

[3] Mr. Brock also challenges the Board's credibility determinations in the whistleblower analysis as violative of *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987). Appellant Br. 11–13, 18. The Board need not thoroughly and explicitly discuss *Hillen* in every decision. *See Joseph v. Dep't of Homeland Sec.*, 497 F. App'x 26, 28

A

We start with Mr. Brock's argument that the Board "inexplicably" determined that the agency met its burden to show it had removed Mr. Brock even in the absence of the discourtesy disclosure. Because substantial evidence supports the Board's determination that the FAA showed independent causation by clear and convincing evidence, we affirm.

The Whistleblower Protection Act prohibits retaliation against an employee for whistleblowing. *See* 5 U.S.C. § 2302(b)(8). An employee who believes he was subjected to prohibited retaliatory action must prove by a preponderance of the evidence that he made a protected disclosure that contributed to the agency's action against him. *See Smith*, 930 F.3d at 1365. "If the employee establishes this prima facie case of reprisal for whistleblowing, the burden of persuasion shifts to the agency to show by clear and convincing evidence that it would have taken 'the same personnel action in the absence of such disclosure.'" *Whitmore v. Dep't of Lab.*, 680 F.3d 1353, 1364 (Fed. Cir. 2012) (quoting 5 U.S.C. § 1221(e)).

In determining whether the FAA has met its burden of showing by clear and convincing evidence it would have taken the same action in the absence of the whistleblowing disclosure, we have instructed the Board to consider three nonexclusive factors:

> [1] the strength of the agency's evidence in support of its personnel action; [2] the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and [3] any evidence that the agency takes

(Fed. Cir. 2012) ("[W]e have not required a formalistic discussion of the *Hillen* factors in every Board decision.").

> similar actions against employees who are not whistleblowers but who are otherwise similarly situated.

*Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).

Here, the first *Carr* factor—the strength of the agency's evidence in support of its action—requires an analysis of the strength of the FAA's evidence purporting to show independent cause for Mr. Brock's removal. *See Miller v. Dep't of Just.*, 842 F.3d 1252, 1259 (Fed. Cir. 2016). The Board considered the seriousness of insubordination on the FAA's ability to operate efficiently, which it characterized as "quite strong" evidence, and Mr. Brock's prior disciplinary history. *Decision* at *16–17. Based on this record, we conclude that substantial evidence—including Mr. Brock's disciplinary history and the testimony of his supervisor Mr. Ivory and the deciding official Mr. Alexander regarding the seriousness of the offense—supports the Board's conclusion that this factor favors the FAA.

The Board also found the second *Carr* factor—the existence and strength of any retaliatory motive on the part of the FAA officials involved in the decision—to favor the FAA. The Board considered that the discourtesy disclosure did not accuse any management official involved in Mr. Brock's removal of wrongdoing and that Mr. Ivory testified that he communicated with Mr. Phillips about the unacceptable behavior. The Board also noted that although "an institutional motive to retaliate against [Mr. Brock] could arise," this discourtesy disclosure was an isolated incident that did not warrant concern. *Decision* at *16 (citing *Whitmore*, 680 F.3d at 1370). In view of the record evidence, we cannot say that the Board's fact finding was unreasonable and we therefore find that substantial evidence supports the Board's finding that this *Carr* factor favors the FAA. *See Smith*, 930 F.3d at 1365.

For the third *Carr* factor—evidence that the agency takes similar actions against similarly situated employees who are not whistleblowers—the Board found this factor to be neutral as there was no evidence presented that the FAA "did not remove insubordinate employees with a prior disciplinary history who were not whistleblowers." *Decision* at *16–17. The Board's conclusion for the third *Carr* factor was reasonable as the FAA "need not produce evidence with regard to each of the factors, nor must each factor weigh in favor of the agency for it to carry its burden." *Rickel v. Dep't of the Navy*, 31 F.4th 1358, 1366 (Fed. Cir. 2022) (cleaned up) (quoting *Robinson v. Dep't of Veterans Affs.*, 923 F.3d 1004, 1018–19 (Fed. Cir. 2019).

We disagree with Mr. Brock's assertion that the Board's thorough analysis was inexplicable. Having considered the record as a whole, we conclude that substantial evidence supports the Board's finding that the FAA would have removed Mr. Brock independent of the discourtesy disclosure.

B

We next address Mr. Brock's argument that the Board erred in its findings regarding his ORM disclosure and sabotage disclosure. Specifically, Mr. Brock argues that he should have been "given the benefit of a ruling in his favor" as to the ORM disclosure "for several reasons including that the lights . . . were all operational with one exception."[4] Appellant Br. 16. Similarly, Mr. Brock asserts that,

---

[4] Mr. Brock has not explained how the operation of lights entitles him to "the benefit of a ruling in his favor." We have explained that "[a]n issue that is merely alluded to and not developed as an argument in a party's brief is deemed waived." *Rodriguez v. Dep't of Veterans Affs.*, 8 F.4th 1290, 1305 (Fed. Cir. 2021) (citing cases); *see also, e.g., Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1341

when considering the sabotage disclosure, Board should have reviewed the entire timeline for context and, had it done so, it would have found in his favor.[5]

Our review of Mr. Brock's arguments reveals that what he really seeks is for this court to reweigh the evidence and make factual findings in his favor. But "[i]t is not for this court to reweigh evidence on appeal." *Rickel*, 31 F.4th at 1366. Because substantial evidence supports the Board's findings concerning the ORM disclosure and sabotage disclosure, we affirm.

## III

We now address Mr. Brock's challenge to the Board's conclusion that he failed to prove his affirmative defense of harmful procedural error. Appellant Br. 18–20.

To prove an affirmative defense of "harmful error," Mr. Brock must show that an error was "likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error" and that the error "caused substantial harm or prejudice." 5 C.F.R. § 1201.4(r); *Ward v. U.S. Postal Serv.*, 634 F.3d 1274, 1281–82 (Fed. Cir. 2011) (citing 5 U.S.C. § 7701(c)(2)(A) and 5 C.F.R. § 1201.56(c)(1)).

---

(Fed. Cir. 2006) ("In order for this court to reach the merits of an issue on appeal, it must be adequately developed."). In this case, Mr. Brock's undeveloped argument, "unsupported by . . . citation to any authority," *Rodriguez*, 8 F.4th at 1305, is therefore waived.

[5] Mr. Brock does not elaborate on what part of the timeline the Board neglected to consider. As previously explained, Mr. Brock thus waives this underdeveloped and unsupported argument. *See Rodriguez*, 8 F.4th at 1305.

The Board, in considering Mr. Brock's allegation that the FAA misapplied Executive Order 13,839[6] during his removal proceedings, found there was no evidence that the FAA relied on this executive order. *Decision* at \*22; *see* Exec. Order No. 13,839, 83 Fed. Reg. 25,343 (May 25, 2018). In addressing Mr. Brock's allegation that it was "harmful error for the agency to assign him the tasks which were the subject of its insubordination charges," the Board explained that Mr. Brock did not specify what procedures the FAA violated by assigning him these tasks. *Decision* at \*23. As for Mr. Brock's allegation that the FAA violated its procedure by "charging him with insubordination instead of failure to follow instructions," the Board noted that Mr. Brock did not show which agency procedure required a charge of failure to follow instructions, instead of insubordination. *Id.* at \*23–24.

Here, Mr. Brock's argument—that the Board improperly determined that the executive order was inapplicable—is not supported by the record evidence. Mr. Brock contends that Executive Order 13,839 was not rescinded by Executive Order 14,003 until January 21, 2021, and thus should have applied to his removal proceedings. Appellant Br. 19; *see* Exec. Order No. 14,003, 86 Fed. Reg. 7231 (Jan. 22, 2021). Mr. Brock also alleges that the FAA[7] failed

---

[6] Executive Order 13,839 aimed to "promote civil servant accountability" by reducing the opportunities for an employee to demonstrate acceptable performance; not requiring "progressive discipline"; and not requiring suspension before proposing removal. 83 Fed. Reg. at 25,343.

[7] Mr. Brock's briefing states that "the ALJ did not properly . . . follow established policy within FAA." Appellant Br. 19. We believe Mr. Brock misspoke as the administrative judge or Board is not governed by FAA policy and therefore interpret his argument to mean that the FAA did not follow its own policy.

to follow its policy entitled "Procedures for Disciplinary and Adverse Actions." Appellant Br. 19. We find Mr. Brock's arguments unpersuasive.

As an initial matter, we see no harmful error in the Board's analysis regarding the FAA not applying Executive Order 13,839. Mr. Brock's removal proceeding fell within the FAA's personnel management system. Executive Order 13,839 pertains to Title 5 disciplinary procedures not applicable to the FAA's personnel management system; thus, under these facts, Title 5 does not apply to Mr. Brock's removal proceeding. *See* 49 U.S.C. § 40122(g)(2) (stating that absent certain exceptions, "provisions of title 5 shall not apply to the [FAA] personnel management system"); *Roche v. Merit Sys. Prot. Bd.*, 596 F.3d 1375, 1378 (Fed. Cir. 2010) (same). Furthermore, Mr. Brock does not elaborate on what policy the FAA violated or how it violated its own policy. Substantial evidence therefore supports the Board's conclusion that Mr. Brock failed to prove an affirmative defense of harmful procedural error.

## IV

We turn now to Mr. Brock's challenge to the Board's finding that there was a nexus between his conduct and his removal. Appellant Br. 20–22.

The agency must establish a nexus—"a clear and direct relationship"—between the sustained charge and the "employee's ability to accomplish his or her duties satisfactorily or some other legitimate government interest." *Decision* at *28. A nexus may be presumed when "egregious circumstances (falsification of records, theft, assault at work, insubordination)" make the connection between misconduct and the efficiency of the service "speaks for itself." *Hayes v. Dep't of the Navy*, 727 F.2d 1535, 1539 (Fed. Cir. 1984). "It is not our duty to find nexus but rather to decide . . . whether the MSPB affirmance of the agency conclusion on the nexus issue meets the statutory criteria

for our affirmance," i.e., whether the Board abused its discretion in affirming the FAA's conclusion. *Id.*; 5 U.S.C. § 7703(c).

The Board here found that the "nexus is self-evident because [Mr. Brock]'s misconduct took place at work." *Decision* at *28. Mr. Brock argues that the Board erred in finding a nexus existed because the insubordination "'took place at work' without further discussion." Appellant Br. 20 (quoting *Decision* at *28).

Although the Board's analysis is brief, we find no reversible error. We have "held that where an employee's misconduct is contrary to the agency's mission, the agency need not present proof of a direct effect on the employee's job performance." *Allred v. Dep't of Health & Hum. Servs.*, 786 F.2d 1128, 1131 (Fed. Cir. 1986). And as we explained in *Hayes*, insubordination at work is one of those circumstances in which the nexus is so apparent that it may be presumed. *Hayes*, 727 F.2d at 1539. As Mr. Brock's insubordination was an impairment to the FAA's ability to carry out its objectives efficiently, the Board's nexus determination was rational and made within reasonable discretion.

V

Finally, we consider Mr. Brock's challenge to the Board's determination that the FAA acted reasonably in removing Mr. Brock. In determining the reasonableness of the penalty imposed by the FAA, the Board must consider whether the penalty represents a responsible balance of the relevant factors articulated in *Douglas*. Mr. Brock argues that Mr. Alexander's "self-serving" testimony and mitigating factors, including that this was Mr. Brock's first charge of insubordination, should have caused the Board to find the agency's penalty unreasonable. Appellant Br. 22–23. Mr. Brock also reargues the charge of insubordination, asserting that he credibly testified that he thought the orders were dangerous. We are not persuaded that the Board

erred in its review of the record and in sustaining the agency's choice of penalty.

An agency determines the appropriate penalty based on the relevant *Douglas* factors. *See Holmes v. U.S. Postal Serv.*, 987 F.3d 1042, 1047 (Fed. Cir. 2021). The Board's role is to "assure that the agency did conscientiously consider the relevant factors and did strike a responsible balance within tolerable limits of reasonableness." *Norris v. Sec. & Exch. Comm'n*, 675 F.3d 1349, 1355 (Fed. Cir. 2012) (quoting *Douglas*, 5 M.S.P.B. at 329). Which *Douglas* factors are applicable lies primarily within "the agency's broad discretion to determine the appropriate penalty for a particular case." *Holmes*, 987 F.3d at 1047 (quoting *Zingg v. Dep't of the Treasury*, 388 F.3d 839, 844 (Fed. Cir. 2004)). We review a penalty determination for clear excess or an abuse of discretion. *Coleman v. U.S. Secret Serv.*, 749 F.2d 726, 729 (Fed. Cir. 1984).

Mr. Alexander, the deciding officer, testified regarding: the seriousness, intentionality, and frequency of Mr. Brock's insubordination; his loss of trust in Mr. Brock because the ATSS position requires integrity for public safety; removal of other FAA employees for insubordination; removal being in the FAA's table of penalties; his belief that Mr. Brock could not be rehabilitated due to a lack of remorse; and not considering suspension in lieu of removal because prior discipline did not change Mr. Brocks behavior. Mr. Alexander also testified that he considered Mr. Brock's fourteen years of service, but "ultimately determined this factor insufficient to outweigh the [other] aggravating factors." *Decision* at *29–30 (citing J.A. 140). Based on Mr. Alexander's testimony, which the Board was free to credit, the Board found the agency's choice of removal to be reasonable.

We cannot say, considering the record evidence and the Board's analysis, that the FAA's determination to remove Mr. Brock was outside the "tolerable limits of

reasonableness." *Norris*, 675 F.3d at 1355 (quoting *Douglas*, 5 M.S.P.B. at 332–33). We therefore conclude that the Board did not err in concluding that removal was within these limits.

## CONCLUSION

We have considered Mr. Brock's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the Board's decision.

## **AFFIRMED**